# United States Court of Appeals for the Federal Circuit

03-1461

Gordon R. England, SECRETARY OF THE NAVY,

Appellant,

v.

THE SHERMAN R. SMOOT CORP.,

Appellee.

Richard S. Ewing, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Donald E. Kinner, Assistant Director. Of counsel on the brief was Robert C. Ashpole, Attorney, Office of the General Counsel, Navy Litigation, Washington Navy Yard, of Washington, DC.

Christopher L. Grant, of Washington, DC, argued for appellee.

Appealed from: Armed Services Board of Contract Appeals

# United States Court of Appeals for the Federal Circuit

03-1461

Gordon R. England, SECRETARY OF THE NAVY,

Appellant,

v.

THE SHERMAN R. SMOOT CORP.,

Appellee.

———————————————

DECIDED: November 3, 2004

———————————————

Before LOURIE, SCHALL, and DYK, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

This case arises under the Contract Disputes Act of 1978 (codified at 41 U.S.C. §§ 601-613 (2000)) ("CDA").  Gordon R. England, Secretary of the Navy ("Navy" or "government"), appeals the decision of the Armed Services Board of Contract Appeals ("ASBCA" or "Board") awarding The Sherman R. Smoot Corporation ("Smoot") compensation for a fifty-one-day delay in the completion of Contract No. N62477-94-C-0028 between Smoot and the Navy (the "contract").  <u>Sherman R. Smoot Corp.</u>, ASBCA No. 53115, 2003-1 B.C.A. (CCH) ¶ 32,198 (Feb. 25, 2003).  The government contends that the Board erred (i) in ruling that Smoot's claim was not barred by the doctrine of accord and satisfaction, and (ii) in applying a rebuttable presumption that the Navy

caused the fifty-one days of delay, based upon the contracting officer's decision to grant Smoot an extension of time for completion of the contract. We agree with the Board that Smoot's claim was not barred by accord and satisfaction. However, we conclude that the Board erred in its use of a rebuttable presumption based upon the contracting officer's extension of the contract completion date. Accordingly, we vacate the Board's decision and remand the case to the Board for consideration of Smoot's claim without the use of a rebuttable presumption based upon the contracting officer's decision to extend the contract completion date.

BACKGROUND

I.

On May 3, 1996, the Navy awarded Smoot the contract, at the firm fixed price of $19,073,139, for renovation and construction work at the Washington Navy Yard. The contract included the standard fixed-price construction contract terms and conditions required by the Federal Acquisition Regulations ("FARs"). See 48 C.F.R. § 52 (1996). The required completion date for the project was March 9, 1998. Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,153-54 (Findings of Fact ("FF") 1, 2, 3).

In letters dated November 20, 1996 and February 6, 1997, Smoot notified Lieutenant Commander ("LCDR") Andrew Trotta, Navy Project Engineer, of design and construction changes that Smoot said would cumulatively delay the completion of the project by fifty-one days to April 29, 1998. On August 8, 1997, Smoot submitted to contracting officer ("CO") John Denton a claim designated "PCO # 172 (Equitable Adjustment for Time Extension)" ("PCO 172"). In the claim, Smoot sought to recover extended overhead costs in the amount of $448,115 for fifty-three calendar days of

delay, based upon a uniform daily rate of $8,455.[1] PCO 172 was based on the cumulative effect of the delays referenced in Smoot's November 20, 1996 and February 6, 1997 letters. In a letter dated August 11, LCDR Trotta stated, "the construction schedule recently submitted is approved with a completion date of 29 April, 1998 . . . . This time is fully compensable, and upon approval for the related costs associated with this time, a modification will be issued. This has been discussed and approved by the [contracting officer]." CO Denton wrote Smoot on October 6, 1997, (i) stating that only twenty-one of the fifty-three days of the delay were the fault of the Navy and therefore compensable, but (ii) agreeing to issue a contract modification for a time extension to April 29, 1998.[2] Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,153-54.

Bilateral Modifications A00055, A00056, and A00121, issued in May and October 1997, provided equitable adjustments in the contract price for the four changes that PCO 172 identified as having caused the fifty-one day delay. Each modification contained the following accord and satisfaction provision:

---

[1] In its November 1996 letter, Smoot claimed that the completion of the contract would be delayed from March 9 to April 15, 1998, a thirty-seven-day period; yet, Smoot labeled this a "39 calendar day delay" in its letter. This discrepancy is not explained in the Board's opinion. In its February 1997 letter, Smoot identified an additional delay period of fourteen days. Although the actual delay Smoot identified in these two letters totaled only fifty-one days, PCO 172 requested reimbursement for fifty-three calendar days. Before the Board, however, Smoot abandoned its claim that the delay was fifty-three days and pursued a claim for only fifty-one days of delay. See Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,156. Hereafter, we will refer to the claim as one for a fifty-one-day delay.

The daily rate of $8,455 was for extended overhead costs that Smoot alleged were associated with the delay. See Kinetic Builder's Inc. v. Peters, 226 F.3d 1307 (Fed. Cir. 2000) (recognizing and reviewing the ASBCA's denial of a contractor's claim for extended overhead costs incurred as a result of a delay in contract completion).

[2] As of October 1997, CO Denton had not issued a contract modification extending the original project completion date of March 9, 1998. Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,153-54.

> Acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full for both time and money and for any and all costs, impact effect, and for delays and disruptions arising out of, or incidental to, the work as herein revised.

In November 1997, CO Denton sent to Smoot proposed bilateral Modification A00135 as a "complete equitable adjustment" for a "51 day time extension," which Smoot returned to CO Denton unsigned in a November 12 letter. In that letter, Smoot responded, "Our agreement . . . is as stated in our November 12, 1997 letter . . . which is a fully compensable time extension, and therefore we do not accept your bilateral modification with the contract price unchanged." That same day, Smoot sent a letter to Commander James Cowell, then Resident Officer in Charge of Construction, expressing its confusion at the differing positions taken by (i) LCDR Trotta in his August 11, 1997 letter; (ii) CO Denton in his October 6, 1997 letter; (iii) Trotta in an oral statement on October 7, 1997, that CO Denton's letter would be rescinded; and (iv) proposed bilateral Modification A00135. On November 20, 1997, Smoot certified PCO 172 as a claim for compensation, and on November 25, 1997, it amended PCO 172 to assert a claim in the amount of $535,126. Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,154-55.

On March 4, 1998, the Navy issued unilateral Modification A00135, which extended the contract completion date by fifty-one days based upon PCO 172, and by seven days for another delay to May 6, 1998. Six days later, on March 10, 1998, the Navy issued unilateral Modification A00177, which increased the total contract price by $80,000. Smoot amended PCO 172 in February 1999 to claim $462,931 ($406,608 for the fifty-one-day delay at a daily rate of $7,973 plus $56,323 for "lump sum costs"). On January 19, 2000, CO Denton issued unilateral Modification A00230. This modification,

according to the Board, was issued not as a final decision of the contracting officer, but "to unilaterally definitize Modification A00177 and to reflect an increase in the total contract value in the amount of $203,776," which was paid to Smoot. Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,155-56.

On August 1, 2000, Smoot amended PCO 172 so as to make the final amount of its claim $179,155; this amount was net of the $283,776 already paid by the Navy. At the same time, Smoot requested a final decision from the contracting officer. When no final decision was forthcoming, on October 31, 2000, Smoot appealed to the ASBCA pursuant to 41 U.S.C. §§ 605(c)(5), 607, from a "deemed denial" of PCO 172. Id. at 159,156.[3]

## II.

Before the Board, Smoot argued that LCDR Trotta had agreed that all fifty-one days of delay were compensable, that CO Denton subsequently recognized that at least some of those fifty-one days were compensable by paying Smoot $283,776, and that the issuance of unilateral Modifications A00177 and A00230 years after the modifications containing the accord and satisfaction provisions (bilateral Modifications A00055, A00056, A00121) proved that CO Denton did not regard those accord and

---

[3]     The CDA provides for a contractor to appeal from a "deemed denial" of his claim, when the contracting officer does not issue a decision:

> Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this Act.

41 U.S.C. § 605(c)(5) (2000).

satisfaction provisions as effective. In response, the Navy asserted that the accord and satisfaction provisions in bilateral Modifications A00055, A00056, and A00121 did bar Smoot's claim in PCO 172, and that, in any event, Smoot had failed to present the requisite evidence to justify recovery. Id. at 159,156.

Following a hearing, the Board first concluded that the Navy was not contractually bound by LCDR Trotta's August 11, 1997, letter. The Board based its conclusion on the fact that Trotta's letter made it clear that he was not a contracting officer, as well as on the fact that CO Denton denied that he had approved full compensation for the extension in Trotta's letter and told Smoot not to take any directions from Trotta without his (CO Denton's) signature. Id. at 159,156 (FF 6).

Second, the Board rejected the Navy's accord and satisfaction defense. The Board relied on the principle that when the government and a contractor continue to consider a contractor's claim after the contractor has signed a release, their conduct demonstrates that they did not consider the release to constitute an accord and satisfaction of the claim. Under such circumstances, the Board stated, the release is not a bar to prosecution of the claim. Id. at 159,156-57 (citing John T. Jones Constr. Co., ASBCA Nos. 48303, 48593, 1998-2 B.C.A. (CCH) ¶ 29,892 at 147,975 (Nov. 10, 1997) (citing Winn-Senter Constr. Co. v. United States, 75 F. Supp. 255, 260 (Ct. Cl. 1948))). Thus, the Board concluded that Modifications A00055, A00056, and A00121 did not bar Smoot's claim embodied in PCO 172.

Finally, the Board concluded that the Navy was responsible for the fifty-one-day delay. The Board invoked a rebuttable presumption found in its caselaw, the so-called "McMullan presumption." See Robert McMullan & Son, Inc., ASBCA No. 19023, 1976-1

B.C.A. (CCH) ¶ 11,728 at 55,903 (Jan. 22, 1976). According to the Board, because Modification A00135, which extended the contract completion date by fifty-one days, was issued by the Navy "after all the material facts of the delays had taken place and after deliberate consideration," a rebuttable presumption was raised that the Navy was responsible for the delay. Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,157 (citing Thomas J. Papathomas, ASBCA Nos. 49,512, 50,895, 1997-2 B.C.A. (CCH) ¶ 28,317 at 145,780 (Oct. 28, 1997), aff'd on reconsideration, 1998-1 B.C.A. (CCH) ¶ 29,460 (Dec. 5, 1997) (quoting McMullan, 1976-1 B.C.A. (CCH) ¶ 11,728 at 55,903)). Because the Board found as a matter of fact that the Navy failed to come forward with evidence at the hearing to rebut this presumption, Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,156 (FF 20), it ruled that Smoot had established that the delay was compensable, id. at 159,157. The government has timely appealed the Board's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

ANALYSIS

I.

We review a decision of the ASBCA on questions of law without deference. 41 U.S.C. § 609(b) (2000); White v. Edsall Constr. Co., 296 F.3d 1081, 1084 (Fed. Cir. 2002). On questions of fact, the Board's decision is final and conclusive and "shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b) (2000); see also Triax-Pac. v. Stone, 958 F.2d 351, 353 (Fed. Cir. 1992). In this case, the pertinent facts are not in dispute.

Rather, the government challenges the Board's decision on two legal grounds.  We address each in turn.

## II.

The government asserts first that the Board erred in not holding that PCO 172 was barred by the doctrine of accord and satisfaction.  When, as here, the Board's findings of fact are not in dispute, the question of whether a claim is discharged by accord and satisfaction essentially reduces to a question of law.  A claim is discharged by accord and satisfaction when "some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim."  O'Connor v. United States, 308 F.3d 1233, 1240 (Fed. Cir. 2002) (internal quotation omitted).  As it did before the Board, the government bases its claim of accord and satisfaction on the language in Modifications A00055, A00056, and A00121 quoted above.  The government points out that Smoot's claim in PCO 172 was that the fifty-one days of delay, for which it was seeking additional compensation under the contract, were caused by the events that were the subject of these three modifications, Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,154-55 (FF 8), and that each of these modifications included an accord and satisfaction provision, id. at 159,155 (FF 8).  CO Denton considered PCO 172, the government urges, not because he viewed the accord and satisfaction provision in the three modifications as ineffective, but because the CDA, 41 U.S.C. § 605(a), required that he consider the claim.

In response, Smoot points to Community Heating & Plumbing Co. v. Kelso, 987 F.2d 1575 (Fed. Cir. 1993), which was decided subsequent to the enactment of the

CDA. According to Smoot, in Community Heating, we relied upon Winn-Senter as authority for the proposition that courts may refuse to bar a claim based upon the defense of accord and satisfaction where the parties continue to consider the claim after execution of a release. 987 F.2d at 1581. In Smoot's view, CO Denton's words and conduct made it clear that he considered PCO 172 to remain outstanding for resolution. Smoot notes that, as in Winn-Senter, its claim was submitted to CO Denton prior to execution of the documents containing the language of accord and satisfaction, and it was subsequently treated on its merits by CO Denton. Accordingly, Smoot argues that the Board correctly relied upon Winn-Senter to reject the Navy's defense of accord and satisfaction.

We agree with the Board that, in the circumstances of this case, the accord and satisfaction provisions in Modifications A00055, A00056, and A00121 did not bar Smoot's prosecution of PCO 172. As noted above, the release of a claim by accord and satisfaction occurs when performance different from that which was claimed is rendered and accepted by the claimant as full satisfaction of his claim. Cmty. Heating, 987 F.2d at 1581. However,

> courts may refuse to bar a claim based upon the defense of accord and satisfaction where the parties continue to consider the claim after execution of a release. Such conduct manifests an intent that the parties never construed the release as an abandonment of plaintiff's earlier claim.

Id. (citing Winn-Senter, 75 F. Supp. 255; A&K Plumbing & Mech., Inc. v. United States, 1 Cl. Ct. 716, 723 (1983)).

In Community Heating, the contractor sought to recover costs incurred as a result of a 474-day delay allegedly caused by the government. 987 F.2d at 1580-81. The Board found that an accord and satisfaction had occurred as a result of the contractor's

execution of various contract modifications related to the delay. Id. at 1581. We reversed, stating that because the evidence in the record "indicates that the Navy continued to negotiate and audit [the contractor's] claims years after they were submitted," those claims were not barred by an accord and satisfaction. Id. In Winn-Senter, the contractor's claims were submitted to the contracting officer prior to the execution of the alleged release, and the claim was decided on its merits by the contracting officer subsequent to the execution of the release. 75 F. Supp. at 260. Under those circumstances, the Court of Claims concluded that "the conduct of both parties shows that they did not construe the release as an abandonment or forfeiture of this pending claim." Id.

Modifications A00055 and A00056 were issued on May 7, 1997, while Modification A00121 was issued on October 9, 1997. Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,154 (FF 8). PCO 172 was submitted to the contracting officer on August 8, 1997. Id. (FF 5). The parties do not dispute that PCO 172 covers the same matters as Modifications A00055, A00056, and A00121. Modification A00135 was subsequently issued on March 4, 1998, and extended the contract completion date by fifty-one days for PCO 172, while Modification A00177 was issued on March 10, 1998 "to increase the amount of funding toward final settlement of . . . (Smoot PCO 172) . . . ." Id. at 159,155 (FF 14). Modification A00230 then issued on January 19, 2000, "to unilaterally definitize Modification A00177 and to reflect an increase in the total contract value in the amount of $203,776.00," and Smoot was paid that amount. Id. at 159,156 (FF 16). We think it clear that subsequent to Modifications A00055, A00056, and A00121, the Navy not only "continue[d] to consider" PCO 172, Cmty. Heating, 987

F.2d at 1581, but it actually paid Smoot compensation on the claim as well. Similar to the situation in <u>Winn-Senter</u>, PCO 172 was submitted prior to the execution of Modification A00121, which contained the accord and satisfaction provision, and was considered by the Navy subsequent to Modification A00121. 75 F. Supp. at 260. Finally, it was subsequent to Modification A00121 that the Navy made payment on PCO 172. We conclude that the payment on PCO 172 after the issuance of Modifications A00055, A00056, and A00121 manifested the parties' intent not to construe the accord and satisfaction provision in those modifications as a release of PCO 172. Thus, the Board did not err in rejecting the Navy's accord and satisfaction defense.[4]

---

[4] <u>Sam Bonk Uniform & Civilian Cap Co., Inc. v. United States</u>, 230 Ct. Cl. 926 (1982), does not compel a different result. In that case, which involved an appeal to the Court of Claims from a decision of the ASBCA under the Wunderlich Act, 41 U.S.C. §§ 321-322 (1976), a release was executed in October 1978 and made retroactive to June 8, 1978. <u>Id.</u> at 927. The claim was not submitted by the contractor until January 8, 1979, and was denied on January 23, 1979. <u>Id.</u> Both the contracting officer and the Board apparently failed to consider the release. The court concluded that because "the entire course of action on the claim took place well after both the execution and the effective date of the release," the contracting officer's failure to consider the release "can therefore shed no light on the intentions of the parties in executing the release." <u>Id.</u> at 928-29. "The release means what it says," the court continued, "and the failure of the contracting officer and the board to consider it . . . does not preclude our consideration of and reliance upon it." <u>Id.</u> at 929 (footnote omitted). The court concluded that the release barred the contractor's claim; it therefore granted the government's motion for summary judgment. This case, however, is closer to the situation in <u>Winn-Senter</u>. PCO 172 was submitted prior to the issuance of Modification A00121—thus, the claim "straddled" at least one of the releases. The court in <u>Sam Bonk</u> recognized that in those circumstances, the court in <u>Winn-Senter</u> concluded that "the conduct of both parties shows that they did not construe the release as an abandonment or forfeiture of this pending claim." 230 Ct. Cl. at 928 (distinguishing and quoting <u>Winn-Senter</u>, 75 F. Supp. at 260). Smoot's situation is therefore distinguishable from that of the contractor in <u>Sam Bonk</u>.

III.

A.

As noted above, in ruling for Smoot, the ASBCA applied the McMullan presumption. The presumption works in the following manner: When the Board is faced with a claim by a contractor for costs incurred as a result of a delay, and the government extended the period of contract performance, the Board will invoke a presumption, subject to rebuttal, that the government was at fault for the delay. See Cable & Computer Tech., Inc., ASBCA Nos. 47420, 48846, 2003-1 B.C.A. (CCH) ¶ 32,237 at 159,411 (Mar. 27, 2003) (citing Gottfried Corp., ASBCA No. 51041, 1998-2 B.C.A. (CCH) ¶ 30,063 at 148,760 (Sept. 25, 1998) (quoting McMullan, 1976-1 B.C.A. (CCH) ¶ 11,728 at 55,903)). "This presumption is especially strong where the time extensions are granted after the delay has occurred." Id. (citing Papathomas, 1997-2 B.C.A. (CCH) ¶ 29,317 at 145,780).

In McMullan, the contractor submitted a claim for overhead costs that were incurred during a suspension in contract work ordered by the government. 1976-1 B.C.A. (CCH) ¶ 11,728 at 55,903. The government subsequently granted the contractor a fifty-five-day extension of the contract completion date. Id. The Board concluded:

> Respondenths [sic] grant of the 55 day extension in Modification 4 amounted to a recognition by it that the overall project was delayed to that extent and an administrative determination that the delay in question was not due to the fault or negligence of [the contractor]. It also raised a presumption, subject to rebuttal, that respondent was responsible for the delay. This presumption was not overcome by respondent.

Id. (citing Singleton Sheet Metal Works, Inc., ASBCA No. 12402, 1969-1 B.C.A. (CCH) ¶ 7,444 (Dec. 20, 1968)). Ostensibly, the Board in McMullan was referring to the

following statement in <u>Singleton Sheet Metal</u>: "[W]e first find that the contracting officer's extension by modification . . . of the over-all performance period . . . establishes a presumption of Government responsibility for the extended performance period." 1969-1 B.C.A. (CCH) ¶ 7,444 at 35,543.

The government contends that the ASBCA erred in applying the <u>McMullan</u> presumption. According to the government, the presumption is "at odds" with section 6(a) of the CDA, 41 U.S.C. § 605(a) (hereinafter "section 605(a)"), and with the decisions of this court in <u>Assurance Co. v. United States</u>, 813 F.2d 1202 (Fed. Cir. 1987), and <u>Wilner v. United States</u>, 24 F.3d 1397 (Fed. Cir. 1994) (en banc). The government points out that section 605(a) provides that in rendering a final decision under the CDA, a contracting officer is not required to make specific findings of fact, but that if he chooses to do so, such findings "shall not be binding in any subsequent proceeding." The government asserts that section 605(a) "would be violated if," as was done in this case, "a contracting officer's finding of fact were treated as giving rise to a rebuttable presumption." Br. Appellant at 7. According to the government, we determined in <u>Assurance</u> that the language of the CDA, quoted above, makes it clear that a contracting officer's findings of fact are not entitled to special deference on appeal. 813 F.2d at 1206. Turning to <u>Wilner</u>, the government argues that we held in that case that treating a contracting officer's findings as giving rise to a rebuttable presumption is inconsistent with section 605(a) and <u>Assurance</u>. In short, the government urges that, in the face of the CDA and <u>Wilner</u> and <u>Assurance</u>, the <u>McMullan</u> presumption is no longer viable.

Smoot responds that its appeal was taken from a "deemed denial" of PCO 172 by CO Denton, who did not render a final decision on its delay claim. Smoot, 2003-1 B.C.A. (CCH) ¶ 32,198 at 159,156 (FF 18). Accordingly, Smoot argues that Wilner and Assurance have no bearing on this appeal. Smoot contends that Wilner relied on the plain language of 41 U.S.C. § 605(a), which refers to findings of fact solely in the setting of a contracting officer's final decision. Thus, Smoot urges that section 605(a) "does not abolish admissions against interest, contractual modifications, or presumptions arising from acts or conduct other than a contracting officer's decision . . . ." Br. Appellee at 11. Smoot argues that because the Board relied upon Modification A00135, it did not impermissibly resort to a presumption based upon findings of fact in a contracting officer's final decision.

Whether the ASBCA erred in applying the McMullan presumption because, as the government claims, the presumption is "at odds" with section 605(a) and Wilner and Assurance is a question of law. We consider first the statutory language.

B.

The CDA provides two avenues by which a government contractor may appeal a decision of a contracting officer denying a claim by the contractor. The contractor may appeal within ninety days of the contracting officer's decision to the appropriate agency board of contract appeals, 41 U.S.C. § 606, or within a year of the contracting officer's decision to the United States Court of Federal Claims, id. § 609(a). However, there are two prerequisites to an appeal to either a board of contract appeals or the Court of Federal Claims. Those prerequisites are (1) that the contractor must have submitted a proper CDA claim to the contracting officer requesting a decision, id. § 605(a), and

(2) that the contracting officer must either have issued a decision on the claim, id. § 609(a), or have failed to issue a final decision within the required time period, id. § 605(c)(5). We have referred to the decision by the contracting officer under the CDA as a "final decision." Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995); Sharman Co. v. United States, 2 F.3d 1564, 1566 (Fed. Cir. 1993).

That brings us to section 605(a), the statutory provision upon which the government relies. It provides in pertinent part as follows:

> (a) Contractor claims. All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer . . . . The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this Act. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding.

41 U.S.C. § 605(a) (2000). The McMullan presumption is not related to a contracting officer's final decision under the CDA. Rather, it arises from the interim decision of a contracting officer to extend a contract's completion date. Thus, in this case, Smoot is not arguing that findings of fact in a final decision by CO Denton gave rise to a presumption. What Smoot is arguing is that CO Denton's interim decision extending the contract completion date gave rise to a presumption. For its part, the government does not contend that CO Denton's decision either constituted, or was part of, a final decision under the CDA. Rather it argues that application of the McMullan presumption is inconsistent with the policies of the CDA.

C.

The government also argues that the McMullan presumption is at odds with Wilner and Assurance. Wilner is the starting point for our analysis. Melvin Wilner, doing business as Wilner Construction Company ("Wilner"), entered into a contract with the Department of the Navy to construct a training facility at Camp Pendleton, California. After the project experienced delays that postponed its completion by 447 calendar days, Wilner submitted a CDA claim seeking additional compensation based on government-caused delay. Wilner, 24 F.3d at 1398. In due course, the contracting officer issued a final decision on Wilner's claim. He determined that Wilner was entitled to 260 calendar days of compensable delay, and he awarded Wilner additional compensation accordingly. Id. Dissatisfied with this result, Wilner brought suit in the United States Claims Court pursuant to the CDA, alleging that the government was responsible for a 447-day delay. Id. Following a trial, the court determined that Wilner had only proven ninety-one days of delay attributable to the government. Nevertheless, the court held that Wilner was entitled to additional compensation under the contract for 259 of the 260 days of delay found by the contracting officer. Id. at 1399. The court arrived at its decision based upon the contracting officer's final decision. In addition, it relied upon J.D. Hedin Construction Co. v. United States, 347 F.2d 235 (Ct. Cl. 1965), for the proposition that "the findings of a contracting officer are entitled to a strong presumption of validity, subject to rebuttal." Wilner, 24 F.3d at 1399 (citing Wilner v. United States, 26 Cl. Ct. 260, 277 (1992)). The court stated: "Plaintiff's failure to present a critical path analysis at trial is an insufficient basis to reject the contracting

officer's determination of critical path delay days based on the technical analysis [presented to the contracting officer]." Id. (quoting Wilner, 26 Cl. Ct. at 279).

The government appealed the Claims Court's decision. On appeal, the government argued that the court had erred as a matter of law by failing to conduct a proper de novo review in the case as required by the CDA. The government contended that, in ruling for Wilner, the Claims Court deferred to the contracting officer's final decision and therefore made improper use of the decision under the CDA. Id. at 1400. Faced with the government's argument, we stated that the task before us was to determine whether the Claims Court's approach in the case was "proper under the CDA." Id.

We began our analysis by examining the two pertinent provisions of the CDA, section 605(a), 41 U.S.C. § 605(a), dealing with the contracting officer's decision, which we have discussed above, and section 609(a)(3), id. § 609(a)(3). Section 609(a)(3) provides that when a contractor challenges a contracting officer's final decision in a direct access suit in the Court of Federal Claims, the action proceeds "de novo in accordance with the rules of the appropriate court." Wilner, 24 F.3d at 1401 (citing 41 U.S.C. § 609(a)(3)). We next considered our prior decision in Assurance. The issue in Assurance was whether the ASBCA could legally reduce a contracting officer's award to a contractor when the contractor, dissatisfied with the award, brought an action before the Board. We concluded in Assurance that, under the CDA, the Board did have the power to reduce the contracting officer's award. We reached that conclusion based upon the plain language of section 605(a), which states that findings of fact by a contracting officer are not binding in a subsequent proceeding, and section 609(a)(3),

which requires that in an action following a contracting officer's decision, the suit is to proceed de novo. Thus, we explained that "where an appeal is taken to a board or court, the contracting officer's award is not to be treated as if it were the unappealed determination of a lower tribunal which is owed special deference or acceptance on appeal." Assurance, 813 F.2d at 1206.

We concluded in Wilner that the language of the CDA and our decision in Assurance made it clear that "when suit is brought following a contracting officer's decision, the findings of fact in that decision are not binding upon the parties and are not entitled to any deference." 24 F.3d at 1401. We further concluded in Wilner that the language of the CDA and our decision in Assurance made it clear that, "in court litigation, a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision. De novo review precludes reliance upon the presumed correctness of the decision." Id. Based upon our analysis, we held that the Claims Court's approach in Wilner "constituted legal error because it was contrary to the concept of proceeding de novo, which is mandated by the CDA." Id. at 1402. We therefore vacated the decision of the Claims Court and remanded the case to the court for further proceedings based upon the evidence adduced at trial that the government was responsible for ninety-one days of delay to the completion of the project. Id. at 1403.

After arriving at our central holding in Wilner, we addressed the Claims Court's reliance upon J.D. Hedin Construction Co. v. United States, 347 F.2d 235 (Ct. Cl. 1965). Hedin involved a claim by a contractor for additional compensation based upon delays arising in a contract for the construction of certain hospital facilities. The case predated

the CDA and did not involve a contracting officer's final decision. Rather, as in this case, the contracting officer had granted the contractor an extension of time for the completion of the project. The Hedin court stated that the "grant of an extension of time by the contracting officer carries with it the administrative determination (admission) that the delays resulted through no fault of the contractor." 347 F.2d at 245. The court further stated that "[t]he findings of the contracting officer have been said to constitute a strong presumption or an evidentiary admission of the extent of the Government's liability, but always subject to rebuttal." Id. (internal citations omitted).[5] We stated in Wilner that Hedin was inconsistent with the CDA, because we viewed the rule in Hedin that makes a contracting officer's findings binding upon the government as strong presumptions or evidentiary admissions unless rebutted as in direct conflict with the requirements of 41 U.S.C. §§ 605(a) and 609(a)(3). 24 F.3d at 1402. Thus, we stated: "We expressly overrule Hedin to the extent that it stands for the proposition that a contracting officer's decision constitutes a strong presumption or an evidentiary admission of the extent of the government's liability, albeit subject to rebuttal." Id. at 1403.

We were faced in Wilner with the following circumstances: a contractor submitted a claim for compensation to the contracting officer; the contracting officer issued a final decision on the claim; the contractor appealed to the Claims Court under the CDA; and the government then appealed to us from the decision of the Claims Court. 24 F.3d at

---

[5] The court in Hedin relied for its statement of the presumption on the following earlier cases from the Court of Claims: Robert E. Lee & Co., Inc. v. United States, 164 Ct. Cl. 365 (1964); George A. Fuller Co. v. United States, 69 F. Supp. 409 (Ct. Cl. 1947); James Stewart & Co., Inc. v. United States, 63 F. Supp. 653 (Ct. Cl. 1946); Irwin & Leighton v. United States, 101 Ct. Cl. 455 (1944).

1398. As seen, the government argued that the Claims Court erred in deferring to the contracting officer's final decision and by making improper use of the decision under the CDA. We agreed with the government and therefore vacated the court's decision. What was at issue in <u>Wilner</u> was the status of a contracting officer's final decision under the provisions of the CDA. As our extended discussion of <u>Wilner</u> makes clear, <u>Wilner</u> did not in any way involve the kind of interim decision of a contracting officer that is at issue in this case. Consequently, in <u>Wilner</u> it was not necessary for us to address the question of whether, at a trial or board hearing, such a decision is entitled to any kind of an evidentiary presumption.[6] However, although we did not expressly reject the

---

[6] The government points to the part of our decision in <u>Wilner</u> where we stated that we were overruling <u>Hedin</u> "to the extent it stands for the proposition that a contracting officer's decision constitutes a strong presumption or an evidentiary admission of the extent of the government's liability, albeit subject to rebuttal." <u>Wilner</u>, 24 F.3d at 1403. The government reasons that because <u>Hedin</u>, like this case, involved a contracting officer's administrative action extending a project's completion date and the evidentiary effect of that action in subsequent court proceedings, the statement in <u>Wilner</u> means that we rejected the <u>McMullan</u> presumption in <u>Wilner</u>.

The statement in <u>Wilner</u> overruling <u>Hedin</u> must be viewed in its proper context. As seen, what was at issue in <u>Wilner</u> was the status in a CDA action in the Claims Court of findings of fact in a contracting officer's final decision in response to a CDA claim. As also seen, <u>Hedin</u> had nothing to do with that; it was a pre-CDA case involving not a contracting officer's final decision, but rather a contracting officer's interim decision during the period of the contract. Thus, it was only after the analysis in <u>Wilner</u> in which the court dealt with the CDA and its prior decision in <u>Assurance</u> and concluded that the decision of the Claims Court was contrary to the <u>de novo</u> review requirement of the CDA that <u>Hedin</u> was discussed. <u>Hedin</u> was discussed because of both the Claims Court's and the <u>Wilner</u> dissent's reliance on the case. <u>See</u>, respectively, <u>Wilner</u>, 24 F.3d at 1402 (majority opinion) ("As noted above, the Claims Court relied upon <u>J.D. Hedin Construction Co. v. United States</u>"); and <u>Wilner</u>, 24 F.3d at 1406 (dissent) ("[The contracting officer's] finding that the government was responsible for 260 days of delay constitutes 'a strong presumption or an evidentiary admission of the extent of the Government's liability, but always subject to rebuttal.' This principle is old and well established." <u>J.D. Hedin Constr. Co. v. United States</u>, 347 F.2d 235, 245, 171 Ct.Cl. 70 (1965)."). <u>Wilner</u> dealt only with a contracting officer's final decision under the CDA and was grounded in the language of the CDA and our prior decision in <u>Assurance</u> (also involving a contracting officer's final decision under the CDA). Under these

McMullan presumption in Wilner, the question remains whether the presumption is at odds with the CDA. It is to that question that we now turn.

We conclude today that the McMullan presumption is at odds with the CDA. The McMullan presumption arose in light of two considerations that were reflected in our predecessor court's jurisprudence prior to enactment of the CDA. The first was the belief that the contracting officer, who had day-to-day contact with the contract work, was in the best position of anyone, except the contractor, to know the extent of the delay for which the contractor was responsible. Irwin & Leighton v. United States, 101 Ct. Cl. 455, 475 (1944). The second was the belief that the contracting officer was not likely to err on the side of the contractor and against the government, whose interests he or she was employed to guard and protect. Id.; see also Robert E. Lee & Co. v. United States, 164 Ct. Cl. 365 (1964); George A. Fuller Co. v. United States, 108 Ct. Cl. 70 (1947). Under these circumstances, it was deemed appropriate to afford the contractor the benefit of a rebuttable presumption that the delay was government-caused. See Irwin & Leighton, 101 Ct. Cl. at 475. After enactment of the CDA, the Board continued to apply the McMullan presumption when faced with a claim by a contractor for costs incurred as a result of a delay, where the government extended the period of contract performance. See Cable & Computer Tech. Inc., ABSCA Nos. 47,420, 48,846, 2003-1 B.C.A. (CCH) ¶ 32, 237 (Mar. 27, 2003); Gottfried Corp.,

---

(Cont'd. . . .)
circumstances, the statement in Wilner overruling Hedin is properly understood as the court rejecting Hedin to the extent Hedin could be construed as standing for the proposition that the findings of fact in a contracting officer's final decision under the CDA give rise to a rebuttable presumption or evidentiary admission.

ASBCA No. 51,041, 98-2 B.C.A. (CCH) ¶ 30,063 (Sept. 25, 1998); <u>Papathomas</u>, ASBCA Nos. 49,512, 50,895, 97-2 B.C.A. (CCH) ¶ 29, 317 (Oct. 28, 1997).

However, Congress made it clear in the CDA that any findings of fact by a contracting officer in a final decision are not binding in any subsequent proceeding. Although, by its terms, the CDA only applies to contracting officers' final decisions, in light of the policies underlying the CDA, we see no basis for drawing a distinction between an interim and a final decision of a contracting officer. Apart from finality, the interim decision here is indistinguishable from a final decision. As set forth in the regulations, a "decision" must include five components: "(i) Description of the claim or dispute; (ii) Reference to the pertinent contract terms; (iii) Statement of the factual areas of agreement and disagreement; (iv) Statement of the contracting officer's decision, with supporting rationale;" and (v) a paragraph advising the contractor of its appeal rights and the requirements for filing an appeal. 48 C.F.R. § 33.211(a)(4) (2000).[7]

Modifications A00135, A00177, and A00230 in this case are written decisions of the contracting officer as to the extent of the excusable delay and the allowable overhead costs as a result of that delay. The modifications include the first four requirements of final decisions. They (i) describe the contractor's claim; (ii) refer to the Smoot change order request and the "Changes" provision of the contract; (iii) indicate the agreed-to fifty-one days of delay; and (iv) state the government's allowed amounts for Smoot's overhead costs and describe the rationale supporting the government's decision. Taken together, the modifications are indistinguishable from final decisions,

---

[7] The final decision must also include a demand for payment "in all cases where the decision results in a finding that the contractor is indebted to the Government." 48 C.F.R. § 33.211(a)(4)(vi) (2003).

save for the absence of a notice of the right to appeal. Although they do not constitute a final decision allowing Smoot to appeal, they effectively became final with the deemed denial of the claim, and they are the only written decisions expressing the contracting officer's resolution of the dispute between the contractor and the government. Indeed, final decisions themselves often refer to such interim decisions. See, e.g., Oman-Fischbach Int'l v. Pirie, 276 F.3d 1380, 1383 (Fed. Cir. 2002) ("The contracting officer issued a final decision denying [the contractor's claim for an equitable adjustment] but reaffirmed the amount awarded in [unilateral] Modification P00053."). There is no basis for distinguishing between the carefully-crafted, written interim decisions in this case and a final decision pursuant to 48 C.F.R. § 33.211(a)(4). In short, the McMullan presumption is at odds with the CDA.

Finally, we think that the McMullan presumption is logically inconsistent. There are three potential causes of delay in performance of a contract: the contractor's actions, the government's actions, and forces outside the control of both parties. A delay in a construction contract is excusable if it arises from either the government's action or external forces.[8] Thus, the mere grant by the government of a contract

---

[8] The pertinent regulation provides:

> The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if—
>     (1) The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include (i) acts of God or of the public enemy, (ii) acts of the Government in either its sovereign or contractual capacity, (iii) acts of another Contractor in the performance of a contract with the Government, (iv) fires, (v) floods, (vi) epidemics, (vii) quarantine restrictions, (viii) strikes, (ix) freight embargoes, (x) unusually severe weather, or (xi) delays of subcontractors or suppliers at any tier arising from unforeseeable

extension does not indicate that the government is at fault; rather, one of a number of other events external to the government could be responsible. In such a situation, a presumption that the government is responsible for the delay is unwarranted, and nothing in the Federal Acquisition Regulations supports such a presumption.

## CONCLUSION

In sum, we agree with the Board that Smoot's claim was not barred by accord and satisfaction. However, we hold that the McMullan presumption is contrary to the CDA and is no longer good law. Since the decision of the Board rested upon the presumption, it is vacated. We remand the case to the Board for a determination of the merits of Smoot's claim, but without the benefit of any presumption arising from the decision of the contracting officer extending the completion date of Smoot's contract.

## COSTS

Each party shall bear its own costs.

### VACATED and REMANDED

---

(Cont'd. . . .)

causes beyond the control and without the fault or negligence of both the Contractor and the subcontractors or suppliers . . . .

48 C.F.R. § 52.249-10(b)(1) (2003).