**TIDEWATER CONTRACTORS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 12–261 C

United States Court of Federal Claims.

(Filed: December 10, 2012)

es that the government breached a contract with Tidewater involving a project to pave a road in Oregon, and seeks damages of $374,274, plus interest and attorney's fees, and injunctive relief. Defendant moves, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss the complaint, asserting that the court lacks subject matter jurisdiction because the contracting officer had not issued a decision pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 7103(f)(2)(B) (Supp. V 2012), when Tidewater filed its complaint. Also before the court is plaintiff's motion for preliminary injunction, in which plaintiff requests that the court enjoin defendant from transferring funds owed to Tidewater to Crook County, Oregon, and from allowing the county to perform a surface treatment on the road that it argues would contaminate the existing surface, thereby hindering or eliminating Tidewater's ability to prove that it complied with contract specifications. These are the same demands that plaintiff makes in its request for permanent injunction in its complaint. For the reasons discussed below, defendant's motion to dismiss is granted, and plaintiff's motion for preliminary injunction is denied as moot.

Joseph A. Yazbeck, Jr., Portland, OR, for plaintiff.

Joseph A. Pixley, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

SWEENEY, Judge

Before the court are plaintiff's motion for preliminary injunction and defendant's motion to dismiss. In this case, plaintiff, Tidewater Contractors, Inc. ("Tidewater"), alleg-

## I. BACKGROUND

### A. Factual Background

The United States, by and through the United States Department of Transportation, entered into a contract with Tidewater, Contract No. DTH70–09–C–00005, on approximately May 1, 2009, pursuant to which Tidewater would pave Beaver Creek Road in Crook County, Oregon ("contract").[1] Compl. ¶ 3. Plaintiff performed the work pursuant to the contract specifications. *Id.* ¶ 4. The specifications provided, amongst other things, that the paving would be sampled at locations as directed by defendant and tested by

---

**1.** The facts are derived from the complaint ("Compl."); the exhibits in the appendix attached to defendant's motion to dismiss ("App."); the exhibits attached to defendant's reply in support of its motion to dismiss ("Def.'s Ex."); and attachments to plaintiff's motion for preliminary injunction ("Mot. for Prelim. Inj."). For pur-

poses of its motion to dismiss, defendant accepts as true the factual allegations set forth in plaintiff's complaint. Likewise, for purposes of ruling on the motion to dismiss, the court accepts as true the factual allegations in plaintiff's complaint.

plaintiff during the progress of the work. *Id.* ¶ 5. Multiple samples were required to be taken by various means, including core samples tested for density in plaintiff's onsite lab. These test samples would later be verified at the Federal Highway Administration ("FHWA" or "agency") lab in Vancouver, Washington. *Id.*

Plaintiff's core samples were tested immediately after they were taken at its onsite lab and delivered to defendant's custody upon completion of the tests. *Id.* ¶ 6. Defendant's representatives left the cores alongside the road at various times and failed to properly handle the core samples while they were in their care, custody, and control. *Id.* Defendant was required under the specifications to conduct verification testing on plaintiff's core samples during the progress of the work and tested only the first five samples during the time frame specified. *Id.* Well after plaintiff had completed the paving, defendant caused the remaining core samples to be shipped to its lab in Vancouver, Washington. *Id.* The cores were tested there, and some samples failed because they were damaged by improper handling and storage. *Id.*

Nonetheless, around August 18, 2011, the government issued a notice of substantial completion. *Id.* ¶ 8. The contracting officer, however, withheld $374,274 in payments due on plaintiff's invoices. *Id.* ¶ 7. According to plaintiff, defendant then decided to transfer contract funds to officials of Crook County so that the county officials could use the funds to pay for an asphalt surface treatment of the road. *Id.* ¶ 9. On February 24, 2012, Tidewater submitted a claim for payment to the FHWA for $377,174.74, in which it sought $374,273.74 for payment it was due for work performed and $2,901 for testing services that a third-party lab performed on core samples. App. A3–11. By certified letter dated March 26, 2012, agency representative Kristin Austin notified Tidewater that the contracting officer anticipated issuing a decision on its claim by September 1, 2012. App. A12.

On March 22, 2012, shortly after Tidewater filed its claim, an FHWA official, Marlene Marcellay, executed a reimbursable agreement, No. DTFH70–12–E00011, with Crook County, obligating $470,000 in agency funds to the county that were identified in a procurement request dated March 5, 2012 ("agreement"). Def.'s Ex. B. The purpose of the agreement was to resolve "issues between FHWA and [Crook] County," and the county would flatten slopes, armor ditches, and perform a chip seal on the Bear Creek Road project. *See id.* ¶ 3; *see also id.* Attach. B. Plaintiff, in a declaration provided by Mark Mann, an engineer for Tidewater on the project, states that the government is transferring funds from Tidewater's contract to Crook County to perform surface treatments on the road that would contaminate the existing pavement surface such that any further testing of the pavement would be not considered accurate. Mot. for Prelim. Inj., Mann Decl. ¶ 15.

On April 18, 2012, the government issued Contract Modification No. 045 ("contract modification") that deobligated funds on Tidewater's contract. Def.'s Ex. C. While the contract modification was not provided by the parties, the contracting officer describes the purpose of the modification in her declaration as follows:

2. On April 18, 2012, I executed Contract Modification (CM) No. 045 to Contract DTFH70–09–C–00005. The purpose of this Contract Modification was to deobligate funding for unused quantities. At contract execution, funds are obligated to pay for the estimated bid quantities for the contract, together with fuel/asphalt escalation and available incentives. When performance on the contract is complete, the actual quantities, the cost of fuel/asphalt, and the presence or absence of incentives can be determined. If the actual quantities are less than the planned quantities, if fuel/asphalt prices have not risen to invoke the fuel escalation clause, and if incentives are not earned, the result is that substantial sums can be left on the contract that are not needed for contract purposes. The de-obligation of those funds allows those funds to be used for other purposes.

3. CM No. 045 de-obligated funds that were not used for fuel/asphalt escalation and for Quality Material and Pavement Smoothness incentives. CM No. 045 also

de-obligated funds that were not used for Aggregate base grading D in the Option schedule. The actual quantity used was 13,321.8 tons. The estimated contract quantity was 19,612. The 6290.2 tons listed on page 3 of CM No. 045 represents the difference between the actual and the estimated quantities. Finally, CM No. 045 de-obligated funds that were not used for Superpave pavement, 19mm nominal maximum size aggregate, 0.3 to <3 million ESAL, type III pavement roughness [described] in the Option schedule. The actual quantity was 4,322.8 tons. The estimated contract quantity was 6,423 tons. The 2100.2 tons listed on page 3 of CM No. 045 represents the difference between the actual and the estimated quantities. The total amount deducted from the contract constitutes the total of the amount obligated to cover these 5 items, and no more.

*Id.* ¶¶ 2–3. The contracting officer adds that "[n]one of the funds de-obligated represent funds relating to the pavement density issue of the asphalt that was actually placed. All funds relating to asphalt placed on the project remain on [Tidewater's] contract." *Id.* ¶ 4.

## B. Procedural History

On April 20, 2012, Tidewater brought suit in this court pursuant to the CDA, alleging that the government breached the contract and seeking $374,274 in damages for the breach.[2] Compl. ¶¶ 1, 13–15. Tidewater also asks that this court order the government (1) not to transfer funds from its contract to Crook County and (2) not to allow performance by the county on the road which, it argues, would contaminate the existing surface, hindering or eliminating its ability to establish its compliance with the contract's specifications. *Id.* ¶ 17; Mot. for Prelim. Inj. 5 (citing 28 U.S.C. § 1491(a)(2) (2006)). At the time Tidewater filed its complaint, the contracting officer had not issued a final decision regarding Tidewater's claim.

On June 7, 2012, the government filed its motion to dismiss pursuant to RCFC 12(b)(1). At the court's request, defendant notified the court on October 5, 2012, that the contracting officer had issued a final decision on August 29, 2012, denying plaintiff's claim. The court then directed the parties to file a joint status report addressing, in light of *Sharman Company, Inc. v. United States,* 2 F.3d 1564 (Fed.Cir.1993), *overruled on other grounds by Reflectone, Inc. v. Dalton,* 60 F.3d 1572 (Fed.Cir.1995) *(en banc),* whether the contracting officer had the authority to issue the final decision because the case was in litigation at the time the decision was issued. In light of the holding in *Sharman,* the parties agreed that the August 29, 2012 final decision was, in effect, a nullity—it was as if the final decision had not been issued. The parties, therefore, believed that it was appropriate for the court to rule upon the government's motion to dismiss.

On November 19, 2012, the court held a status conference with the parties regarding the status of the project. Both parties represented that Crook County had not begun the overlay work described in the agreement, and defendant and agency counsel stated that the overlay work was not slated to begin until sometime in 2013. Also during the status conference, the court denied plaintiff's request for injunctive relief.

## II. LEGAL STANDARDS

### A. RCFC 12(b)(1) Motion to Dismiss

▆▆ When deciding a motion to dismiss, the court assumes all factual allegations set forth in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed. Cir.2006). Because the court's "general power to adjudicate in specific areas of substan-

**2.** Plaintiff cites "41 U.S.C. Section 601 et seq." in referring to the CDA in its complaint. Compl. ¶ 1. In 2011, Congress amended the CDA to "remove ambiguities, contradictions, and other imperfections," and recodified title 41 of the

United States Code, Pub.L. No. 111–350, 124 Stat. 3677 (2011). As a result, all further citations in this opinion are to the current version of the CDA, which is now codified at 41 U.S.C. §§ 7101–7109.

tive law ... is properly raised by a [Rule] 12(b)(1) motion," *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999), the court analyzes defendant's motion under RCFC 12(b)(1).

▇ The burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it, *see McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), and a plaintiff must establish jurisdiction by a preponderance of the evidence, *Reynolds v. Army & Air Force Exch. Servs.,* 846 F.2d 746, 748 (Fed.Cir.1988). If the defendant or the court questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction. *See McNutt,* 298 U.S. at 189, 56 S.Ct. 780. When ruling upon a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to decide any factual disputes. *See Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999); *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1572 (Fed.Cir. 1996) (stating that when a challenge to the court's jurisdictional authority is made, the court may consider evidence outside the pleadings to resolve the issue). If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B. Relevant CDA Sections

▇ If a contractor has a dispute with the government relating to a contract, the CDA requires the contractor to submit a written claim to the contracting officer within six years of the accrual of the claim. 41 U.S.C. § 7103(a). For claims over $100,000, the contracting officer is required to issue a written decision within 60 days of receipt of the claim or notify the contractor when such a decision will be rendered. *Id.* § 7103(f)(2). The contracting officer's decision shall be "issued within a reasonable time, ... taking into account such factors as the size and complexity of the claim and the adequacy of information in support of the claim provided

by the contractor." *Id.* § 7103(f)(3). If the contracting officer does not issue a decision on the contractor's claim "within the period required," the claim will be deemed denied and an appeal of the claim is authorized. *Id.* § 7103(f)(5). Therefore, for claims brought under the CDA, the existence of a contracting officer's final decision (whether actual or deemed denial) is a jurisdictional prerequisite to filing an appeal in the United States Court of Federal Claims ("Court of Federal Claims"). *See England v. Swanson Grp., Inc.,* 353 F.3d 1375, 1379 (Fed.Cir.2004); *Sharman,* 2 F.3d at 1569 n.6.

### III. DISCUSSION

In its motion to dismiss, defendant asserts that the court lacks jurisdiction to entertain the complaint because, at the time plaintiff filed its complaint, the contracting officer had not issued a final decision and had expressly reserved issuing a final decision by September 1, 2012, pursuant to the CDA, 41 U.S.C. § 7103(f)(2)(B). Plaintiff, on the other hand, relying on case law, argues that the agreement and contract modification constitute the contracting officer's final decision. For the reasons discussed below, the court finds that it lacks the jurisdiction to hear plaintiff's claim under the CDA because a final decision had not been issued at the time plaintiff filed its complaint in this court, and as a result, the court must dismiss the complaint. Because the court does not have jurisdiction over the allegations raised in plaintiff's complaint, it also does not have the authority to grant the injunctive relief sought by plaintiff.

### A. The Court Lacks Jurisdiction Absent a Final Decision

▇ As explained above, there must exist a contracting officer's final decision (either actual or deemed denial) before a contractor can challenge such a decision in the Court of Federal Claims. Therefore, under the CDA, the court lacks subject matter jurisdiction to decide the allegations in plaintiff's complaint because the contracting officer had not yet issued a final decision at the time plaintiff filed its complaint in this court. *See id.; England,* 353 F.3d at 1379. As stated above, on February 27, 2012, Tidewater submitted a claim to the FHWA for

$377,174.74 concerning the contract. By certified letter dated March 26, 2012, an agency representative notified Tidewater that the contracting officer anticipated issuing a decision by September 1, 2012. On April 20, 2012, Tidewater filed its complaint in this case. Thus, at the time the complaint was filed, the FHWA had timely notified Tidewater that the contracting officer's final decision would be issued by September 1, 2012. Tidewater does not assert that the contracting officer did not propose to issue a final decision within a reasonable period. See 41 U.S.C. § 7103(f)(3). Therefore, because the contracting officer had not issued a final decision regarding Tidewater's claim, nor had the claim been "deemed denied," since the FHWA expressly reserved the right to issue a decision by September 1, 2012, the court lacks jurisdiction to hear Tidewater's complaint.[3]

## B. Plaintiff's Argument That a "Final Decision," In Effect, Was Issued Lacks Merit

To avoid dismissal, plaintiff relies on case law interpreting the CDA and asserts that the government has, in effect, issued a final decision. Plaintiff turns to *Placeway Construction Corp. v. United States*, 920 F.2d 903, 906–07 (Fed.Cir.1990), asserting that the United States Court of Appeals for the Federal Circuit ("Federal Circuit") held that the words "final decision" are not required in order for the contracting officer to have effectively made a final decision on a contractor's claim. In *Placeway*, the contractor submitted a written demand, but the contracting officer refused to pay. *Id.* at 905. The Federal Circuit "conclude[d] that the [contracting officer] effectively made a final decision on the government claim" because "[i]t was undisputed that Placeway had completed performance of the contract ... [;] the contract price for the work completed was undisputed and was due upon completion of

work[;]" and "the [contracting officer] effectively granted the government's claim in the amount of $297,057.12 when he declined to pay Placeway the balance due on the contract." *Id.* at 906. The Federal Circuit stated that "[t]he decision is no less final because it failed to include boilerplate language usually present for the protection of the contractor." *Id.* Plaintiff argues that applying *Placeway*, the Court of Federal Claims in *Volmar Construction, Inc. v. United States*, 32 Fed.Cl. 746 (1995), held that the issuance of a payment voucher and inspection report by the government was a final decision, even though it did not "bear the magic words 'final decision' or contain information concerning the contractor's appeal rights," *id.* at 754. In *Volmar*, the Court of Federal Claims found that the contractor had completed the work and that the parties did not disagree on the original contract price and on it being due and payable upon the contractor's completion of the contract. *Id.* at 755. Thus, it concluded, the payment voucher and inspection report "f[e]ll within the relaxed final decision standard enunciated in *Placeway*." *Id.* Finally, citing *England v. Sherman R. Smoot Corp.*, 388 F.3d 844 (Fed.Cir.2004), plaintiff argues that final decisions may be rendered in the form of contract modifications. *See id.* at 857 ("Taken together, the modifications are indistinguishable from final decisions.").

Applying these cases to the facts here, plaintiff asserts that the agreement and the contract modification constitute the contracting officer's final decision because the contracting officer effectively denied Tidewater's claim when it executed those documents. Tidewater claims that the government has given or is going to give to Crook County funds under the agreement that are owed to Tidewater, and accordingly, the government's decision to enter into the agreement and contract modification represent, in effect, a "final decision."

---

**3.** As mentioned above, the contracting officer issued a final decision on August 29, 2012, after Tidewater had filed its complaint in this court. The parties understand and agree that because the final decision was issued after plaintiff had filed its complaint, that decision was issued without authority and is essentially a nullity. *See Sharman,* 2 F.3d at 1571–72 (stating that once a

claim is in litigation, the United States Department of Justice gains exclusive authority to act in the pending litigation, and this exclusive authority divests the contracting officer of his or her authority to issue a final decision on the claim). Therefore, that final decision does not save plaintiff's complaint from dismissal.

Plaintiff's argument lacks merit. In *Placeway*, the Federal Circuit held that even though "boilerplate language" is not required in a contracting officer's final decision, a contracting officer's decision must determine "both liability and damages." 920 F.2d at 907 ("Both issues of liability and of damages should usually be resolved before judicial review is sought."). Here, however, at the time Tidewater filed its complaint, there had been no decision as to liability and damages with respect to Tidewater's February 24, 2012 claim. Specifically, Tidewater's rights had not been impacted in any way by the government's issuance of the agreement and contract modification. Therefore, no final decision had been issued to satisfy the CDA's jurisdictional prerequisites.

Moreover, Tidewater's assertions have no merit because they are based on the incorrect assumption that the government is using or has used money owed to Tidewater to pay Crook County. As noted above, on March 22, 2012, the FHWA executed an agreement with Crook County in which the agency obligated $470,000 to the county. The purpose of the agreement was to resolve issues between the government and Crook County. Further, the contracting officer explains that the government entered into the contract modification because contract performance was complete and substantial funds obligated to support estimated but unused quantities remained on the contract. Therefore, Tidewater's underlying assertion that the government used money from its contract, pursuant to the contract modification and the agreement, to pay Crook County, is incorrect. Tidewater has submitted a declaration from its project engineer on the contract who states that the agreement "clearly demonstrates FHWA's intent [to] transfer funds retained from Tidewater's contract payments to Crook County...." Mot. for Prelim. Inj., Mann Decl. ¶ 15. No such "intent" is apparent to the court. Moreover, the contracting officer has made it expressly clear that "[n]one of the funds de-obligated" under the contract modification came from subtracting funds currently involved in Tidewater's February 24, 2012 claim. Def.'s Ex. C ¶ 4. "All funds relating to asphalt placed on the project remain on the contract." *Id.*

Plaintiff has not offered evidence to rebut the contracting officer's declaration. Therefore, the court finds that the agreement and contract modification do not impact Tidewater's claim, and that its argument that the agency's execution of the agreement and the contract modification represents a final decision lacks merit.

## C. There Was No Constructive Termination for Default

In the alternative, plaintiff argues that the government constructively terminated for default Tidewater, and as a result, binding precedent mandates that this court take jurisdiction over plaintiff's complaint. The facts here, however, do not support the result plaintiff advocates.

Plaintiff cites *Malone v. United States*, 849 F.2d 1441 (Fed.Cir.1988). In that case, the Federal Circuit held that default terminations are exceptions to the "final decision" requirement, and the rationale behind this exception is that "if the government incurs no excess reprocurement costs, and the contractor incurs no termination for convenience costs, the contractor has no opportunity to contest the validity of the default termination." *Id.* at 1445. Plaintiff also cites other cases for the same proposition. Then, relying on nonbinding decisions of the boards of contract appeals, plaintiff argues that as with "final decisions," whether a contractor has been terminated for default is a functional determination. Plaintiff avers that if the contracting officer's action has the effect of terminating a contractor for default, the court should treat the action as a termination for default. In support of its argument, plaintiff again relies on the agreement under which the government obligated $470,000 to Crook County and the contract modification under which the government deobligated the amount due to Tidewater under the contract by $466,393.41, and claims that the government has, in effect, terminated the contract with Tidewater by refusing to pay it. In other words, plaintiff claims, the government constructively terminated Tidewater for default.

However, Tidewater's argument fails for the reasons previously explained. The

purpose of the agreement was to resolve issues between the government and Crook County and all of the funds relating to Tidewater's claim remain on the contract. Thus, contrary to Tidewater's contention, the government had not terminated the contract by allowing Crook County to perform work that was not within the scope of Tidewater's contract. Further, at the time the complaint was filed, the contracting officer reserved the right to issue a final decision that would determine liability and damages on or before September 1, 2012, pursuant to the CDA.[4] Therefore, Tidewater was not constructively terminated for default.

In sum, plaintiff bears the burden of establishing subject matter jurisdiction, and it has not met its burden. Further, because the court lacks jurisdiction to hear Tidewater's complaint, the court consequently lacks the authority to grant its requested relief, including its request for injunctive relief.

## IV. CONCLUSION

For the reasons discussed above, the government's motion to dismiss is **GRANTED**, and plaintiff's motion for preliminary injunction is **DENIED AS MOOT**. Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**. No costs. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

---

4. Additionally, as defendant notes, termination for default under the Federal Acquisition Regulation ("FAR") involves detailed notification procedures, including a written notice of termination that "constitutes a decision that the contractor is in default *as specified and that the contractor has the right to appeal under the [CDA's] Disputes clause.*" 48 C.F.R. § 49.402–3(g)(7) (2012). Here, the contracting officer did not issue such a "notice" as required by the FAR.