Drake, Ch. J.,
delivered the opinion of the court:
The claimant had two contracts with the Navy Department for the construction of steam-engines and appurtenances, one dated October 26, 1863, the other dated November 13, 1863, from which dates until May 8, 1869, work was prosecuted by the claimant upon the engines and appurtenances.
From the 15th of June, 1864, till the 1st of March, 1869, all the work was done under the supervision of an inspector-appointed by the Navy Department, who made to the Department detailed reports of the progress of the work j at first semi-monthly, and afterward monthly.
In March, 1869, the Navy Department appointed a board of officers of the Navy to examine and estimate upon the unfinished machinery under contract at different establishments, with a view of obtaining a release from the contracts, if, in their opinion, such a release would be for the interest of the Government. This board, on the 26th of April, 1869, made a full report on the subject, which is set out in the finding of facts.
Thereupon, and doubtless in consequence of that report, the Department, on the'£8th of May, 1869, notified the claimant that it had decided not to complete the engines and boilers upon the construction of which the claimant was then engaged, and that no further progress would be made with the work.
The claimant then made to the Department a written proposition, in the alternative, either to take back all the machinery and receive $150,000, or to deliver it all, in fits then incomplete condition, at the Charlestown navy-yard, for $259,068.40, payable on the delivery there.
On the 20th of May, 1869, the Department notified the claimant to deliver the engines, boilers, and appurtenances at that yard on the terms specified in said proposition; and, rec *499 ognizing $259,068.40 as the “balance in settlement of the two contracts,” stated that in consequence of tbe very limited appropriations * * * only one payment would be made, and that would be on the delivery of the machinery, &c., at the Charlestown navy-yard; and that the ■ balance could not be paid until Congress should make further appropriation, but a certificate for the amount due would be given the claimant.
The Department, on the same day that this notice was given, ordered a chief engineer of the Navy to inform it of the then present condition and progress in construction of the said engines, boilers, and appurtenances, and also what parts then remained uncompleted under the terms of the contracts; and on the 26th of May that officer made a detailed report, whereby the Department was fully and correctly informed of the then condition of each item of the engines, &e., whether completed, or unfinished, or not commenced. -
The claimant proceeded to deliver the engines, boilers, and appurtenances at the Charlestown navy-yard, where they have ever since remained in the possession of the Government, no part of them having ever been returned or tendered by the Government to the claimant.
On the 8th of December, 1869, the following certificate was issued to the claimant:
“Navy Department,
“Bureau oe Steam-Engineering-,
11 December 8, 1869.
“ This certifies that the Corliss Steam-Engine Company, of Providence, B. I., having made, in its letter of May 14,1869, to the Navy Department, an offer to settle and cancel the contract made by and between the Bureau of Steam-Engineering and the Corliss Steam-Engine Company, of October 26, 1863, and' November 13,1863, for a pair of 100" by 48" engines, boilers, and appurtenances, and a pair of 60" by 36" engines, boilers, and appurtenances, on the following terms, viz: To deliver the engines, boilers, and appurtenances at the Charlestown navy-, yard, in their then unfinished condition, for the sum of two hundred fifty-nine thousand and sixty-eight dollars forty cents, ($259,068.40,) and the offer of the company having been accepted by the Bureau of Steam-Engineering, (by order of the Department,) by the Bureau’s letter of May 20, 1869, and the engines, boilers, and appurtenances embraced in the two contracts *500 above named having been delivered at the Charlestown navy-yard in an unfinished condition, as agreed upon between .the Corliss Steam-Engine Company and the Bureau of Steam-Engineering, except five hundred fifty-two (552) tubes, amounting to thirteen hundred eighty dollars forty cents, ($1,380.40,) which, being deducted, entitles the Corliss Steam-Engine Company to the payment of the sum of two hundred fifty-seven thousand six hundred eighty-eight dollars, ($257,688,) due on the 1st day of October last, and payment will be made when the United States Congress shall make the necessary appropriation for this Bureau.
“J. W. KING, u Chief of Bureau.”
On the 10th of March, 1870, the Navy Department informed the claimant that a board had been ordered to examine its claims for payment under the aforesaid contracts, and requested the return of said certificate -, which request was declined in the following letter:
“THE ARLINGTON,
“ Washington, J). O., March 11,1870.
“Dear Sir : Deferring to yours of the 10th instant, I beg leave respectfully to decline your request to return the certificate of indebtedness given under date of December 8,1869. And I submit that a most reasonable condition to a re-opening of the question of my ‘claims for payment under contracts made with the Bureau’ would be a ‘return’ of the engines, boilers, and appurtenances (weighing some fifteen hundred tons) from the navy-yard in Charlestown to the works of the Corliss Steam-Engine Company, in Providence, in the same condition as they were when the arrangement of May, 1869, was consummated ‘ by order of the Department,’ whereby the original contracts for this machinery were canceled, and the terms of settlement for said machinery were all arranged, and since been fulfilled on the part of the Corliss Steam-Engine Company, as is fully and officially confirmed by said certificate.
“ Tours, <&c.,
“GEO. H. COELISS,
“ President Corliss Sfeam-Bngine Company.
“ J. W. King, Esq.,
‘ ‘ Chief of Bureau of Steam-Engineering, u Washington, D. CP .
*501 This suit is instituted to recover the amount stated in the certificate as due to the claimant.
We should be at a loss to understand why this suit should be necessary, were it not that, in the Act July 15,1870, “making appropriations for the naval service for the year ending June 30, 1871,” (16 Stat. L., 325,) there appears a proviso, “ that, before paying the claim of the Corliss Steam-Engine Company, the Secretary of the Navy shall cause a re-examination of said claim to be made by the law-officers of the Navy Department and two competent engineers to be detailed for that purpose, who shall deduct from the contract-price with said steam-engine company whatever sum it would have cost said company to have completed their said contract.”
How or why this legislation was obtained is, of course, unknown here; nor need we seek light on that subject, as it is no part of the contract before us; nor is it a rule of decision prescribed to this court, but simply a direction to officers of an Executive Department, which they are bound to follow, but which has no controlling force here. We therefore deal with the case as though that proviso did not exist.
And what is the case? It is simply a settlement,' by mutual agreement, between the claimant and the Navy Department, of a matter which, by the action of that Department, was placed in an unsettled condition. There is no allegation that the Department was ignorant of the facts of the case, or that the claimant was guilty of any fraud, misrepresentation, or other wrong; but, on the contrary, it is singularly clear and unquestionable that every fact was known to both parties, and that the whole transaction was unaffected by taint or infirmity. If such a settlement, accompanied by the giving up by one, and the taking possession by the other, of the property involved, cannot be judicially maintained, it would seem that no settlement by any contractor with the Government can be considered a finality against the Government. If the Government may causelessly set aside such a settlement, why may not the claimant? Would an action here by the claimant, for more than the amount stipulated in that certificate, be entertained for a •moment, unless it could impeach the settlement for fraud or mistake of fact? And if it would not be heard in such an action,-why should the Government be allowed to repudiate its own contract, and demand that the company take Jess than the *502 agreed amount? When the Government assumes the position of a contractor with a citizen, it comes under all the obligations and liabilities of an individual, and must abide by its own acts and agreements, with the added obligation, because it is a government and more powerful than any individual, to deal with theindividual in the strictest fairness and justice. It is to hold the Government to.its contracts with the citizen, and to give the latter full redress for any breach of such contracts, that" this court was established.
But we need not enlarge. When in the letter of March 11, 1870, the president of the company submitted that a most reasonable condition to a re-opening of the question of the company’s claim would be a return of the engines, boilers, and appurtenances to the works of the company, in the same condition as they were when the arrangement of May 1, 1869, was consummated, he assumed a position which was strictly tenable. Such a return would not, merely in and of itself, authorize a re-opening of the settlement; but, certainly, without it such reopening could not be allowed consistently with any established legal principle.
There will be judgment for the claimant for $257,688.