**Gordon R. ENGLAND, Secretary of the Navy, Appellant,**

v.

**THE SWANSON GROUP, INC., Appellee.**

**No. 03–1051.**

United States Court of Appeals, Federal Circuit.

Jan. 9, 2004.

Andrew P. Averbach, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellant. On the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Mark A. Melnick, Assistant Director; Christian J. Moran and Kathleen A. Kohl, Attorneys.

Arlene M. Richardson, Richardson & French, L.L.C., of Hayneville, AL, for appellee.

Before SCHALL, GAJARSA, and PROST, Circuit Judges.

SCHALL, Circuit Judge.

Gordon R. England, Secretary of the Navy ("Navy" or "government"), appeals the decision of the Armed Services Board of Contract Appeals ("Board") that awarded $278,076.25 in termination settlement costs to The Swanson Group, Inc. ("Swanson"). *Swanson Group, Inc.*, 02–2 B.C.A. (CCH) ¶ 31,906 (A.S.B.C.A. July 1, 2002). The government asserts that the Board lacked jurisdiction over Swanson's appeal because Swanson failed to present to the contracting officer a "claim" within the meaning of the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613 (2000). We agree. We therefore vacate the Board's decision and remand the case to the Board with the instruction that it dismiss Swanson's appeal for lack of jurisdiction.

## BACKGROUND

### I.

On December 20, 1991, Swanson was awarded a contract by the Western Division of the Naval Facilities Engineering Command. Under the contract, Swanson was required to provide guard services at the Long Beach Naval Shipyard in California. *Swanson Group, Inc.*, 98–2 B.C.A. (CCH) ¶ 29,896, at 147,988 (A.S.B.C.A. Nov.7, 1997). The contract had a monthly price of $203,457.73 (prorated from a yearly price of $2,441,492.70) and was scheduled to end on September 30, 1992. *Swanson Group, Inc.*, 02–1 B.C.A. (CCH) ¶ 31,836, at 157,288 (A.S.B.C.A. Mar.28, 2002).

On April 24, 1992, the contracting officer directed Swanson to cure what the Navy perceived to be Swanson's failure to comply with the terms of the contract. *Swanson Group*, 98–2 B.C.A. (CCH) ¶ 29,896, at 147,992–93. In his cure notice, the contracting officer stated that Swanson had failed to properly guard certain posts and had failed to provide a sufficient number of qualified guards at the facility. *Id.* at 147,991–92. On April 27, 1992, the contracting officer issued a final decision terminating the contract for default, stating that Swanson had "failed to comply with the terms of the contract and [had] failed to meet the conditions identified in the [cure notice] letter." *Id.* at 147,993. Swanson timely appealed the default termination to the Board. *Id.* On November 7, 1997, the Board issued a decision converting the termination for default to a termination for convenience. *Id.* at 147,-988–95. Swanson received the Board's decision on November 17, 1997.

## II.

Swanson's contract with the Navy incorporated various standard provisions of the Federal Acquisition Regulations ("FAR"), codified at 48 C.F.R. chs. 1–99.[1] When a contract is terminated for the convenience of the government, the contractor may submit a termination settlement proposal. FAR § 52.249–2(e), 48 C.F.R. § 52.249–2(e). The contractor has one year to submit its proposal. *Id.* If the contractor fails to submit a proposal within that period, the contracting officer "may determine, on the basis of information available, the amount, if any, due the Contractor because of the termination and shall pay the amount determined." *Id.* Apart from the requirements of the CDA, the contractor may appeal from any termination settlement determination by the contracting officer provided it (1) submits a termination settlement proposal within one year from the "effective date of termination" or (2) requests an extension of time for doing so. FAR § 52.249–2(e), (j), 48 C.F.R. § 52.249–2(e), (j). FAR § 2.101 defines the "[e]ffective date of termination" as "the date the contractor receives the notice [of termination]" if the notice is received after the date fixed for termination. 48 C.F.R. § 2.101. Swanson received the Board's decision converting the termination for default to a termination for convenience on November 17, 1997. Any termination settlement proposal it wished to submit was therefore due to the contracting officer by November 16, 1998.[2]

Swanson did not submit a termination settlement proposal within the required one-year period. Instead, on November 10, 1998, prior to the expiration of the period, counsel for Swanson sent a letter to the Navy requesting a one-year extension of time to "initiate the claim."[3] Counsel for the Navy responded on November 23, 1998, stating that "the one year period in which [a termination settlement proposal] could have been filed has expired," but adding that he would consult with the contracting officer regarding

---

**1.** All citations to the FAR and the C.F.R. are to the respective 2003 versions, which are not materially different from the versions incorporated into the contract.

**2.** A settlement proposal "means a proposal for effecting settlement of a contract terminated in whole or in part, submitted by a contractor or subcontractor in the form, and supported by the data, required by this part." FAR § 49.001, 48 C.F.R. § 49.001.

**3.** Swanson's request for an extension demonstrates an understanding that at that time, Swanson had not yet submitted a "claim" to the Navy: "It is my understanding that The Swanson Group has one year to fifteen months in which *to initiate a claim* based on the contract dispute.... Accordingly, on behalf of The Swanson Group, I hereby request a one year extension *in order to initiate the claim.*" (emphases added).

Swanson's request. Counsel for the Navy informed Swanson on December 9, 1998 that the contracting officer had denied its request for an extension of time. Counsel explained that while the contracting officer planned to move forward and issue a settlement determination on the contract, "[a]ny information which Mr. Swanson wishes to submit for consideration in the determination may be provided the Contracting Officer through me."

In a unilateral settlement determination issued on March 4, 1999, the contracting officer awarded Swanson $12,294.21 in termination settlement costs. Swanson appealed that decision to the Board on March 22, 1999. *Swanson Group, Inc.,* 01–1 B.C.A. (CCH) ¶31,164 (A.S.B.C.A. Nov.2, 2000). Before the Board, the Navy moved to dismiss based on the affirmative defense that Swanson had forfeited its right to appeal by failing to submit a termination settlement proposal within the one-year period established by FAR section 52.249–2. *Id.* at 153,928, 153,929–30. The Navy argued that the deadline for the submission of Swanson's proposal was one year from the Board's decision, or November 6, 1998. *Id.* at 153,930. Denying the Navy's motion, the Board concluded that FAR section 52.249–2(j) did not operate to bar Swanson's appeal. *Id.* The Board pointed out that the one-year period for submitting a termination settlement proposal runs from the "effective date of termination," which is defined by FAR section 2.201 as the date on which the contractor receives notice of termination if notice is received subsequent to the actual date of termination. *Id.* Swanson received notice of the Board's decision on November 17, 1997, establishing that as the effective date of termination. The Board ruled that because Swanson filed its request for an extension of time on November 10, 1998, within one year of the effective date, it had preserved its right to

appeal the contracting officer's settlement determination. *Id.*

On March 28, 2002, the Board issued its quantum decision on the merits of Swanson's appeal. *Swanson Group, Inc.,* 02–1 B.C.A. (CCH) ¶31,836, at 157,297. In its decision, the Board added $249,840.38 to the contractor's award of $12,294.21, resulting in a total award of $262,134.59. *Id.* On Swanson's motion for reconsideration based on errors committed by the Board, the Board increased the award by $15,941.66, bringing the total award to $278,076.25. *Swanson Group, Inc.,* 02–2 B.C.A. (CCH) ¶31,906, at 157,621. The Navy timely appealed the Board's decision to this court on October 30, 2002. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10) (2000).

## ANALYSIS

### I.

■ Under the CDA, we review *de novo* the decision of an agency board of contract appeals on a question of law. 41 U.S.C. § 609(b). The determination of jurisdiction under the CDA is a question of law. It is therefore subject to *de novo* review. *Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1575 (Fed.Cir.1995).

The government contends that the Board lacked jurisdiction to entertain Swanson's appeal from the contracting officer's March 4, 1999 settlement determination. In so doing, however, it advances for the first time a contention different from the one raised before the Board by the Navy. The government argues that because Swanson did not submit a claim, or a termination settlement proposal that could have ripened into a claim, prior to the contracting officer's settlement determination, the Act did not provide for an appeal of that determination. For the reasons set forth below, we agree that the

Board lacked jurisdiction over Swanson's appeal.

## II.

The CDA provides for the resolution of contract disputes arising between the government and contractors. It requires that "[a]ll claims by a contractor against the government shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). While the statute itself does not define the term, FAR section 2.201 defines a "claim" as "[1] a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain...." 48 C.F.R. § 2.201; *see also Reflectone*, 60 F.3d at 1575–76. The statute further provides that the "contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this Act." 41 U.S.C. § 605(b). Upon the issuance of a contracting officer's final decision on a claim, the contractor has the choice to appeal either to the appropriate board of contract appeals or to the Court of Federal Claims. *Id.* §§ 607(d), 609(a)(1). This Court may then entertain appeals from a final decision of either tribunal. 28 U.S.C. § 1295(a)(10).

To streamline the resolution of government contract claims, the CDA imposes strict limits on the dispute resolution process. *See Sharman Co. v. United States*, 2 F.3d 1564, 1568–69 n. 6 (Fed.Cir.1993), *overruled on other grounds by Reflectone*, 60 F.3d 1572; S.Rep. No. 95–1118, at 1–2 (1978), *reprinted in* 1978 U.S.C.C.A.N.

5235, 5235–36. We have enforced the strict limits of the CDA as "jurisdictional prerequisites to any appeal." *Sharman*, 2 F.3d at 1569 n. 6 (citations omitted). We have held, based on the statutory provisions, that the jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim. *See James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541–42 (Fed. Cir.1996) ("Thus, for the [Court of Federal Claims] to have jurisdiction under the CDA, there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.") (citing *Reflectone*, 60 F.3d at 1575, and *Sharman*, 2 F.3d at 1568–69).

As noted above, the government now asserts that the Board lacked jurisdiction over Swanson's appeal because Swanson did not present a claim to the contracting officer. That is correct. While the Board's decision addressed the issue of whether Swanson had complied with the requirements of FAR section 52.249-2(e), it did not address the jurisdictional prerequisites of the CDA itself. Prior to the contracting officer's settlement determination, Swanson submitted neither a claim nor a termination settlement proposal that could have ripened into a claim.[4] Therefore Swanson could not appeal the contracting officer's March 4, 1999 settlement determination. Swanson's appeal was not authorized by the CDA because it was not an appeal from a contracting officer's final decision on a claim that Swanson had submitted. Accordingly, the Board did not have jurisdiction to adjudicate Swanson's

---

4. In *Ellett Construction,* we held that though a termination settlement proposal initially is just a proposal, and not a claim, it nevertheless may ripen into a "claim" under the CDA once negotiations reach an impasse and the proposal is submitted for decision: "[FAR section 52.249–2] implicitly includes termination settlement proposals within the operative definition of a claim to the extent they are not favorably resolved by a contracting officer's decision." 93 F.3d at 1543–44.

appeal. We therefore vacate the decision of the Board awarding Swanson $278,076.25 in termination settlement costs.

The Board was presented with a similar situation in *Cedar Construction*, 92–2 B.C.A. (CCH) ¶ 24,896 (A.S.B.C.A. May 6, 1992). There, a fixed-price construction contract was terminated for the convenience of the government. The contract in *Cedar Construction* also incorporated FAR section 52.249–2. The contractor was required to submit a termination settlement proposal by June 19, 1990, one year from the effective date of the government's termination for convenience. The one-year period expired without the contractor submitting a proposal, however. On June 28, 1990, the contractor requested an extension of sixty days to submit a proposal, which the contracting officer denied on September 11, 1990. The contractor appealed to the Board from that denial on December 10, 1990. *Cedar Constr.*, 92–2 B.C.A. (CCH) ¶ 24,896, at 124,165.

On appeal, the Board declined to address the arguments of either party because "there is no proper claim before us and, therefore, no jurisdiction to decide the issue presented." *Id.* The Board relied upon its prior decision in *Harris Corp.*, 89–3 B.C.A. (CCH) ¶ 22,145, at 111,460 (A.S.B.C.A. July 25, 1989), for the proposition that in the absence of a claim, the mere refusal to consider a settlement proposal does not suffice to confer jurisdiction on the Board. *Id.* at 124,166. As the Board explained,

> In order to vest the Board with jurisdiction over the dispute as to whether the proposal was time-barred, it was necessary that the refusal be followed by a submission of the proposal to the contracting officer as a claim.... A timely appeal following actual or deemed denial of that claim would complete the prerequisites for jurisdiction.

*Id.* We follow the same logic in this case and hold that the Board should have dismissed Swanson's appeal for lack of jurisdiction due to its failure to submit a termination settlement proposal that could have ripened into a claim.

■ The fact that the Board lacked jurisdiction over Swanson's previous appeal does not, however, bar Swanson from submitting a termination settlement proposal to the contracting officer at this time. If Swanson submits such a proposal now, the contracting officer will be in a position either to reject it on the ground that it is untimely or to consider it on the merits. If the contracting officer rules the proposal untimely, Swanson will have the option of appealing that decision as a denial of a claim under the CDA. If the contracting officer entertains the proposal and denies it in whole or in part, Swanson will have the option of appealing that decision as a denial of a claim under the CDA as well. *See, e.g., Cedar Constr.*, 92–2 B.C.A. (CCH) ¶ 24,896, at 124,166 ("Such dismissal, however, is without prejudice to the resubmission of a proper claim ... and filing a new appeal in the event of the contracting officer's denial of said claim."). We express no views on the merits of any termination settlement proposal that Swanson may submit in the future. Neither do we express any views on the merits of any defenses the government may assert in response to such a proposal before the contracting officer, the Board, or the Court of Federal Claims.

## CONCLUSION

For the foregoing reasons, we hold that the Board lacked jurisdiction over Swanson's appeal. The Board's final decision awarding Swanson $278,076.25 in termination settlement costs is therefore vacated. The case is remanded to the Board

with the instruction that it dismiss Swanson's appeal.

*VACATED* and *REMANDED.*