# United States Court of Appeals for the Federal Circuit

---

**M. MAROPAKIS CARPENTRY, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2009-5024

---

Appeals from the United States Court of Federal Claims in 03-CV-2825, Judge Lawrence M. Baskir.

---

Decided: June 17, 2010

---

STEPHANIE E. DIVITTORE, Rhoads & Sinon LLP, of Harrisburgh, Pennsylvania, argued for plaintiff-appellant. Of counsel on the brief was KELLY H. DECKER.

KENT C. KIFFNER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and DONALD E. KINNER, Assistant Director.

---

Before NEWMAN, LOURIE, and LINN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* LINN.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

LINN, *Circuit Judge.*

This action arises under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-613. M. Maropakis Carpentry, Inc. ("Maropakis") appeals the decision of the United States Court of Federal Claims dismissing Maropakis's complaint for lack of subject matter jurisdiction because it failed to present to the contracting officer a "claim" within the meaning of the CDA. Maropakis further appeals the grant of the government's counterclaim for liquidated damages. Because Maropakis has demonstrated no errors of law or clearly erroneous factual findings, we *affirm.*

## BACKGROUND

On April 6, 1999 the Navy awarded a contract to Maropakis for, among other things, the replacement of windows and a roof at a warehouse building located at Naval Inventory Control Point in Mechanicsburg, Pennsylvania. *M. Maropakis Carpentry, Inc. v. United States*, 84 Fed. Cl. 182, 185 (2008). The contract specified a completion date of January 16, 2000, though this was later modified by extensions to February 4, 2000. The contract also included a liquidated damages clause, in the form of 48 C.F.R. § 52.211-12, which provided that Maropakis would be liable to the government for $650 per day for each day of delay beyond the contract completion date.

Maropakis did not begin work until after the specified completion date. The project was completed May 17, 2001, 467 days after the modified completion date. On August 20, 2001, Maropakis sent a letter addressed to

"Mr. W.L. Robertson O.I.C., Navfac Contracts" requesting "an extension of contract time . . . from January 16, 2000 to April 17, 2001, a total of 447 consecutive calendar days" based on five alleged delays: (1) 187 days due to the inability to locate a window manufacturer; (2) 32 days in time lost from the start date of fabrication of windows due to the need to re-submit plans; (3) 107 days due to the discovery of lead-based paint; (4) 20 days due to the Navy's prohibition of the use of asphalt as a roofing adhesive; and (5) 101 days for time lost while searching for a metal fabricator. *Id.* at 191. On August 28, 2001, James Nihoff, the contracting officer ("Contracting Officer") on Maropakis's contract responded to the August 20 letter to Robertson by stating that Maropakis did not "present[] sufficient justification to warrant the time extension" requested. *Id.* The Contracting Officer rejected each of the requested extensions, noting that, among other problems, some of the dates of delay were overlapping. In closing, the Contracting Officer invited Maropakis to "submit additional information" in support of its request and stated that "[t]his letter is *not* a Final Decision of the Contracting Officer." *Id.* at 192.

On June 28, 2002, the Navy sent Maropakis another letter, pointing out that Maropakis had neither "responded [to the August 2001 letter] with additional information" nor "requested a Contracting Officers [sic] final decision for these matters." *Id.* The letter also indicated that the government had made payments to Maropakis in the amount of $1,053,115, $244,036 less than the total contract price of $1,297,151. Finally, the letter informed Maropakis that it would owe liquidated damages of $303,550 representing $650 per day for the 467 days of delay in completing the project. The Navy applied this amount against the remaining contract

balance, $244,036, resulting in a total due from Maropakis of $59,514.

Maropakis responded in a letter on July 22, 2002 reiterating its earlier request for an extension but mentioning specifically only the 107-day extension for the removal of lead contaminated windows. This letter referred to multiple delays but did not specify a total number of days of extension requested. The letter then stated, "we *will* dispute . . . the liquidated damages amount of $303,550.00 and *will* indicate that M. Maropakis was not responsible for the delays." *Id.* at 193 (emphases added). There was no follow-up to this correspondence by either party. Maropakis did not file a separate formal claim regarding the time extension.

On December 20, 2002 the Navy issued Final Decision #03-002F which reiterated the government's demand for liquidated damages. The government characterizes this letter as a final decision pertaining only to the Navy's demand for liquidated damages. Maropakis contends that this letter was a final decision applying to each of its previous requests for extension of the contract period.

There was no further activity by either party until Maropakis filed a complaint on December 17, 2003 in the Court of Federal Claims alleging (1) breach of contract due to government delay and seeking resulting time extensions, and (2) breach of contract due to the government's assessment of liquidated damages and seeking remission of the full $303,550. Amended Compl., ¶¶ 50-52, 54-55, *M. Maropakis*, 84 Fed. Cl. 182. The government responded by asserting a counterclaim for the $59,514 balance it contended was due the government in liquidated damages. On October 3, 2008, the Court of Federal Claims granted the government's motion to dismiss Maropakis's claim for time extensions for lack of

subject-matter jurisdiction, finding that Maropakis had not submitted a "claim" for contract modification as required under the CDA. The Court of Federal Claims also granted the government's motion for summary judgment as to its counterclaim on the liquidated damages issue. Maropakis appeals both decisions, arguing that its July 22, 2002 letter was sufficient to constitute a claim under the CDA. In addition, Maropakis argues that it was not required to comply with the jurisdictional prerequisites of the CDA to assert its claim for a time extension as a defense to the government's counterclaim for liquidated damages.

We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

I. Standard of Review

We review de novo the decision of the Court of Federal Claims to dismiss for lack of jurisdiction. *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009). A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

We also review de novo the grant of summary judgment by the Court of Federal Claims, "drawing justifiable factual inferences in favor of the party opposing the judgment" and reapplying the standard applicable to proceedings before the Court of Federal Claims. *Long Island Savs. Bank, FSB v. United States*, 503 F.3d 1234, 1244 (Fed. Cir. 2007). In the Court of Federal Claims, once the moving party comes forward with evidence satisfying its initial burden on a motion for summary judgment, the party opposing the motion must present evidence creating a genuine issue of material fact. *Id.*

Whether a particular defense is permitted under the CDA is also a question of law, which we review de novo. *See Frazer v. United States*, 288 F.3d 1347, 1351 (Fed. Cir. 2002) (holding that "this court reviews *de novo* all legal determinations" including the defense of equitable tolling).

## II. Time Extensions

The parties in this case dispute whether Maropakis submitted a valid claim for time extensions to its contracting officer sufficient to give the Court of Federal Claims jurisdiction over the issue. Under the CDA, the Court of Federal Claims has jurisdiction over actions filed within twelve months of a contracting officer's decision on a claim. 41 U.S.C. § 609(a). This Court has found that jurisdiction thus requires both a valid claim and a contracting officer's final decision on that claim. *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996). Since the CDA itself does not define the term "claim," we look to the Federal Acquisition Regulations (FAR) implementing the CDA for the definition. *See Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc). The FAR defines "claim" as: "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201. While a CDA claim need not be submitted in any particular form or use any particular wording, it must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1997).

The CDA also requires that a claim indicate to the contracting officer that the contractor is requesting a final decision. *Ellett*, 93 F.3d at 1543 ("Besides meeting the FAR definition of a claim, the CDA also requires that all claims be submitted to the contracting officer for a [final] decision."). "This does not require an explicit request for a final decision, as long as what the contractor desires by its submissions is a final decision. . . ." *Id.* (internal quotation marks omitted). These requirements of the CDA are jurisdictional prerequisites to any appeal. *England v. Swanson*, 353 F.3d 1375, 1379 (Fed. Cir. 2004). Thus, for the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim—a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision. In addition, the contractor must have received the contracting officer's final decision on that claim. *Ellett*, 93 F.3d at 1541-42.

In its complaint, Maropakis alleged it was entitled to damages because of various "delays, impacts and disruptions" by the government. *M. Maropakis*, 84 Fed. Cl. at 184. The Court of Federal Claims found that it lacked subject matter jurisdiction over this claim for time extension because Maropakis had not satisfied the requirements of the CDA. The trial court thoroughly analyzed each communication between Maropakis and the government and found that none of them, either alone or in combination, contained a clear and unequivocal statement sufficient to qualify as a claim. *Id.* at 196-203.

On appeal, Maropakis argues that its letter of July 22, 2002 was sufficient to constitute a claim under the CDA. Specifically, Maropakis argues that because the July 22, 2002 letter "was the product of continuing discussions between the parties concerning the assessment of liquidated damages and cause of Project delay, the letter was

sufficient to give the contracting officer adequate notice of the basis of Maropakis's claim." Maropakis's Principal Br. at 20-21. The trial court found, however, that "[a]t best, a generous reading of the July 22, 2002, correspondence can be interpreted as Maropakis's request for a final decision on the government's liquidated damages assessment." *M. Maropakis*, 84 Fed. Cl. at 203. We agree that Maropakis's letter of July 22, 2002 was not sufficient to provide the contracting officer adequate notice of the basis and amount of Maropakis's claim and therefore does not satisfy the CDA. As noted by the trial court, this letter mentioned specifically only the 107-day extension previously requested. *Id.* The letter did not state the total number of days requested in extension and did not request a final decision. In fact, the letter appears to promise a forthcoming written claim, which never materialized. A claim cannot be based merely on intent to assert a claim without any communication by the contractor of a desire for a contracting officer decision. *See Transamerica Ins. Corp., Inc. v. United States*, 973 F.2d 1572, 1579 (Fed. Cir. 1992), *overruled in part by Reflectone*, 60 F.3d 1572 (holding that submissions qualified as CDA claims when the contractor "asserted in writing and with sufficient specificity a right to additional compensation" and "the contractor communicated his desire for a contracting officer decision"); *Mingus Constructors Inc. v. United States*, 812 F.2d 1387, 1394 (Fed. Cir. 1987) (finding that letters indicating an intent to file a claim in the future for an unspecified amount were not claims as defined by the contract where the contractual definition of claim was substantially the same as the FAR definition: "a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract").

Maropakis also argues that even if it was not in technical compliance with the CDA, the United States had actual knowledge of the amount and basis of Maropakis's claim and therefore the Court of Federal Claims had jurisdiction. However, Maropakis provides no evidence that the government was ever placed on actual notice of the specific number of days of extension that Maropakis would ultimately request. Instead, Maropakis points to the government's demand for liquidated damages and asserts that since it refers to Maropakis's July 22, 2002 letter, the government was fully aware that at least the amount of damages assessed for the 107-day extension was in dispute.

Even assuming the government's knowledge of Maropakis's contentions along the way, there is nothing in the CDA that excuses contractor compliance with the explicit CDA claim requirements. *See* 41 U.S.C. § 605 (requiring that "[a]ll claims by a contractor against the government relating to a contract shall be in writing," "shall be submitted to the contracting officer for a decision," and "[f]or claims of more than $100,000, the contractor shall certify [] the claim"). Indeed, we have recognized that the CDA is a statute waiving sovereign immunity. *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1370 (Fed. Cir. 2009). A "waiver of sovereign immunity must be strictly construed in favor of the sovereign." *Orff v. United States*, 545 U.S. 596, 601-02 (2005). Such a waiver "must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). Thus, we have enforced the "strict limits of the CDA as 'jurisdictional prerequisites to any appeal.'" *England*, 353 F.3d at 1379 (quoting *Sharman Co. v. United States*, 2 F.3d 1564, 1568-69 n.6 (Fed. Cir. 1993), *overruled on other grounds by Reflectone*, 60 F.3d 1572). Maropakis's argument that this court may

ignore the jurisdictional requirements of the CDA based on Maropakis's allegations of knowledge by the government is without merit.

Maropakis's letter of July 22, 2002 was not a valid claim under the CDA because it did not provide the Contracting Officer adequate notice of the total number of days actually requested in extension, it did not state a sum certain, and it did not request a final decision. The absence of notice and the failure to request a final decision were jurisdictional impairments for a claim under the CDA. *Ellett*, 93 F.3d at 1541-42. Moreover, while technical compliance with certification is not a jurisdictional prerequisite to litigation of a contractor's claim under the CDA, it is a requirement to the maintenance of such an action. 41 U.S.C. § 605(c)(6); *see Sharman*, 2 F.3d at 1569. Here, in addition to the jurisdictional defects noted above, Maropakis's letter was not certified.

Because Maropakis did not meet the jurisdictional prerequisites of a claim against the government for contract modification under the CDA, the Court of Federal Claims correctly dismissed Maropakis's breach of contract claim for lack of jurisdiction.

### III. Liquidated Damages

Maropakis also claimed that the government's assessment of damages was improper and sought its remission in full. The government made a motion for summary judgment on this claim and on its corresponding counterclaim for the assessed liquidated damages. The Court of Federal Claims found that Maropakis "failed to establish a material issue as to whether the government's liquidated damages provision was an unenforceable penalty." It therefore granted the government's summary judgment motion, finding Maropakis liable for the retained balance

of the contract and an additional $59,514 in liquidated damages. *M. Maropakis*, 84 Fed. Cl. at 208.

On appeal, Maropakis argues that "the Court did not consider Maropakis's factual defenses." Maropakis's Principal Br. at 27. Maropakis argues that its right to assert a defense against the government's claim for liquidated damages means that the CDA requirements that would otherwise apply to Maropakis's affirmative claim for entitlement to time extensions no longer apply and Maropakis can raise these issues to defend against the government's claim. We disagree.

Maropakis relies on *Placeway Construction Corp. v. United States*, 920 F.2d 903 (Fed. Cir. 1990), as authority for the proposition that a valid CDA claim is not required prior to raising excusable delay as a defense to the government's liquidated damages claim.[1]  However, the

---

[1]    The dissent agrees with Maropakis's argument citing *Garrett v. General Electric Co.*, 987 F.2d 747, 749 (Fed. Cir. 1983) as authority for the assertion that claims and defenses are distinct. Slip op. at 3-4. However, *Garrett* is inapposite. The issue in *Garrett* was whether the Board of Contract Appeals had jurisdiction over a contracting officer's decision that GE must correct a problem under a contract at no additional cost to the Navy even though GE submitted no claims itself to the contracting officer. Thus, the only issue addressed by this Court in *Garrett* was whether the Board had "jurisdiction over the Navy's claims under the contract" and "whether the Navy's directives under the contract's inspection clause are appealable CDA claims." *Garrett*, 987 F.2d at 749. The Court found that this was a government claim over which the Board correctly determined it had jurisdiction despite the Navy's choice of a nonmonetary remedy. *Id.* *Garrett* did not discuss GE's defenses to the government claim at issue or whether those defenses themselves involved contractor claims that must adhere to the requirements of the CDA. Therefore, *Garrett* like *Placeway*

*Placeway* decision does not support such a rule. In *Placeway*, the contractor had submitted a written demand for payment of an unpaid contract balance of $297,226 to its contracting officer along with other demands for payment. *Id.* at 905. Placeway's demands, like Maropakis's requests, were not valid claims under the CDA. *Id.* In response to Placeway's demands, the contracting officer refused to release the contract balance because Placeway had failed to complete the contract "in a timely manner." *Id.* Placeway filed a complaint in the Claims Court seeking, among other amounts, the contract price balance. The United States Claims Court determined that the government's decision to keep the contract balance was a government claim as opposed to a contractor claim and thus did not require certification. However, the Claims Court nevertheless concluded that it did not have jurisdiction over the dispute because the government had not made a final decision on its claim and thus had itself not made a valid CDA claim. On appeal, we determined that the contracting officer had effectively made a final decision on the government claim notwithstanding the fact that the contracting officer reserved the authority to redetermine the amount of the setoff claimed based upon the receipt of additional information on the actual costs incurred by the government. *Id.* at 906-07. Therefore, we concluded that the Claims Court did have jurisdiction over the government's claim for liquidated damages. *Id.* However, we did not address whether the Claims Court had jurisdiction over any of Placeway's defenses.

In this case, there is no dispute that the Court of Federal Claims had jurisdiction over Maropakis's claim relating to liquidated damages and the government's

does not support the rule advocated by Maropakis and agreed to by the dissent.

corresponding counterclaim. The parties also agree that the claim for liquidated damages was a government claim that did not require certification and that the contracting officer properly made a final decision on the issue. The Court of Federal Claims correctly found that *Placeway* had no bearing on the CDA's requirements for contractor claims. *M. Maropakis*, 84 Fed. Cl. at 204. Several other Court of Federal Claims cases have directly addressed this issue and have all concluded that even when used as a defense to a government claim, a contractor's claim for contract modification must adhere to the jurisdictional requirements of the CDA. *Sun Eagle Corp. v. United States*, 23 Cl. Ct. 465, 477 (1991) ("This court holds that the plaintiff is challenging a government claim to liquidated damages *and* making its own contractor claim to recover amounts withheld for liquidated damages. The latter must be certified.")[2] (emphasis added); *Elgin Build-*

---

[2]    The dissent quotes portions of this same language in *Sun Eagle* when describing the proposition that claims and defenses are distinct. Slip op. at 5. However, the dissent, with all due respect, ignores the actual holding of *Sun Eagle*, which states as follows:

In the case at bar, plaintiff is seeking an adjustment of contract terms or monetary relief because it defends against the assessment of liquidated damages on the basis that the Army caused the delay. The claim is a claim by the contractor. The contractor made the claim in its claim letter and, if it recovers, the CDA would award the contractor interest on its claim. *Plaintiff's contractor claim must be certified, as required by 41 U.S.C. § 605(c).* In this case plaintiff did certify its claim. Defendant asserts that the certification is insufficient because the contractor failed to certify that the data supporting its claim were "accurate and complete to the best of the contractor's knowledge and belief," as required by section 605(c). The court need not address this issue, as the case is

*ers, Inc. v. United States*, 10 Cl. Ct. 40, 44 (1986) (stating that "where . . . the contractor seeks to contest the assessment of liquidated damages by claiming entitlement to time extensions or other relief, the court is presented with a claim by the contractor against the government and that must first be presented to the CO" and the contractor's defenses in such a case are "limited to the nature of, and the issues present in, the assessment itself—that is, for example, to contest that there was any delay in contract completion").

The statutory language of the CDA is explicit in requiring a contractor to make a valid claim to the contracting officer prior to litigating that claim. The purpose of this requirement is to encourage the resolution of disagreements at the contracting officer level thereby saving both parties the expense of litigation. *See* 48 C.F.R. § 33.204; *Reflectone*, 60 F.3d at 1580. Maropakis does not point to any authority that provides an exception to the

---

> in settlement. *However, if the issue were resolved adversely to plaintiff, the result would call for the dismissal of all of its contractor claims, and the court would retain jurisdiction only over the government claim.* As a practical consequence, plaintiff likely would agree to the stay of the government claim while it recertified its contractor claims, obtained a contracting officer decision thereon, and refiled in the Claims Court. That action would be joined with the instant action and proceedings scheduled on an expedited basis.

*Sun Eagle*, 23 Cl. Ct. at 482 (emphases added) (internal citations omitted). Thus, *Sun Eagle* does not, as stated by the dissent, support the proposition that the absence of CDA prerequisites on Maropakis's claims of government delay does not bar its right to raise them in defense of the government's liquidated damages claim. Instead, *Sun Eagle* stands for the exact opposite.

CDA claim requirements when a contractor's claim for contract modification is made in defense to a government claim. And we see no reason to create such an exception. Thus, we hold that a contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the CDA, whether asserting the claim against the government as an affirmative claim or as a defense to a government action.

Here, the Court of Federal Claims correctly required Maropakis to comply with the CDA requirements notwithstanding Maropakis's styling of its claim as a defense to a government counterclaim for liquidated damages. Because the Court of Federal Claims correctly held that it did not have jurisdiction over Maropakis's claim for time extensions, and because Maropakis's extension claim was the only defense asserted against the government's counterclaim for liquidated damages, we affirm the grant of summary judgment to the government on its counterclaim for liquidated damages.

## CONCLUSION

The Court of Federal Claims's determination that it lacked jurisdiction over Maropakis's claim for breach of contract is affirmed. We also affirm the Court of Federal Claims's grant of summary judgment to the government on its counterclaim for liquidated damages.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**M. MAROPAKIS CARPENTRY, INC.,**

*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**

*Defendant-Appellee.*

---

2009-5024

---

Appeal from the United States Court of Federal Claims in 03-CV-2825, Judge Lawrence M. Baskir.

---

NEWMAN, *Circuit Judge*, dissenting.

The court holds that the contractor M. Maropakis Carpentry, Inc. is barred, in its appeal to the Court of Federal Claims of the contracting officer's grant of the government's claim for delay damages, from defending against that claim by showing that the government caused and contributed to the delay. Thus my colleagues grant summary judgment to the government on its claim for $303,550 in delay damages, on the theory that the court "lack[s] subject matter jurisdiction" to consider the defense that Maropakis had raised with the Contracting Officer. I do not share the view that there is no "jurisdiction" to consider the defense to the government's claim, whereby the claim was summarily granted without permitting inquiry as to its merits and defenses.

During performance of the contract, Maropakis had requested various extensions of time, in light of various performance delays. The government does not deny that it had a role in delay.[1] My colleagues' ruling that the court does not have "subject matter jurisdiction" of the contractor's defense that the government contributed to the delay, is based on the theory that Maropakis "had not submitted a 'claim' for contract modification as required under the CDA." Maj. Op. at 5. My colleagues hold that the courts are deprived of jurisdiction because no separate claim to modify the contract was made. However, Maropakis is not seeking contract reformation. Nor is Maropakis seeking damages or additional compensation. Maropakis is simply raising an objection to the merits of the government's claim for delay damages, defending on the ground that the government had contributed to the delay.

The question is not whether Maropakis could have or should have submitted a claim for some sort of contract modification; the question is whether Maropakis is permitted to defend against the government's claim for delay damages. The majority cites the FAR's inclusion of "the adjustment . . . of contract terms" in the definition of "claim." However, this definition does not mean that the FAR requires that the government contract be presented for modification before a contractor can defend against a government claim arising from contract performance.

---

[1]    It was not disputed that the government ordered cessation of all work and did not authorize Maropakis to proceed to remove the lead paint until 107 days after discovery of the paint by Maropakis. It was not disputed that when Maropakis found that the windows specified by the government did not exist, the government refused to change the specifications, and by the time the windows were custom made and the lead paint removed, the entire performance time set in the contract had elapsed.

Indeed, the contracting officer did not require Maropakis to file a request for contract modification in order for the contracting officer to consider Maropakis' various requests for extensions of performance time. These requests were simply denied for various reasons relating to substance, not procedure.

When a claim is within a tribunal's jurisdiction, like the government's claim for delay damages, the tribunal routinely has jurisdiction to consider defenses to the claim. This rule is not negated by any provision of the Contract Disputes Act. Yet my colleagues sustain the government's CDA claim and its sizable monetary award, permitting no defense and imposing obstacles that have been negated by statute and precedent. For example, my colleagues hold that Maropakis was required to "certify" its defense, as if it were a monetary claim. Precedent is contrary. My colleagues hold that Maropakis was required to state a "sum certain" that it is claiming; however, Maropakis is not claiming a sum; it is objecting to the damages claimed by the government, raising the defense that the government contributed to the delay. And my colleagues hold that Maropakis was required to somehow seek and obtain "contract modification" before it could raise this defense; this curious theory is devoid of support.

In *Garrett v. General Electric Co.*, 987 F.2d 747 (Fed. Cir. 1993), the court considered whether the government's directive to the contractor to do certain remedial work at the contractor's expense was a government "claim"; this court held that it was, and that the contractor could appeal and raise its objections without filing a separate "claim" of its own. Jurisdiction was based on the government's claim, not the contractor's objection to that claim. This court was explicit in holding that the contractor did not have to submit its own claim:

> GE submitted no claims to the CO on the engine defects at the time of the decision. The Act, however, provides that a contractor may appeal a Government claim to the appropriate board without submitting a claim of its own to the CO. Thus, only jurisdiction over the Navy's claims under the contract are at issue in this appeal.

*Id.* at 749 (citation omitted). This holding is contravened by the court's decision today, for although jurisdiction of the government's claim for delay damages is undisputed, the court now requires a separate jurisdictional basis for the contractor's objection to the government's claim.

*Placeway Construction Corp. v. United States*, 920 F.2d 903 (Fed. Cir. 1990) arose on facts analogous to those of Maropakis. In *Placeway* the appeal was from the contracting officer's decision not to release the contract balance, the government asserting delay damages. Like Maropakis, the contractor raised the defense that the government had caused some of the delay. *See Placeway Constr. Corp. v. United States*, 18 Cl. Ct. 159, 162 (1989), *aff'd in part*, *vacated in part*, and *remanded*, 920 F.2d 903 (Fed. Cir. 1990). This court agreed with the Claims Court that the government's withholding of the contract balance as a setoff against its claim for delay damages was a government claim. *Placeway*, 920 F.2d at 906. Because the contracting officer's decision on the government claim was final, jurisdiction was proper, despite the absence of a contractor claim complying with CDA procedures including certification. That is, the contractor's complaint seeking recovery of the contract balance was not a contractor claim, and did not require certification. This

court's ruling today conflicts with its holding in *Place-way*.[2]

Other decisions have explored various aspects of the difference between a claim and a defense, as particular facts and circumstances have tested the boundary. In *Sun Eagle Corp. v. United States*, 23 Cl. Ct. 465 (1991), the Claims Court explained that while certification is required of a contractor's claim for payment under the contract, for it constitutes a "contractor claim," a defense to a government claim need not be certified. The *Sun Eagle* court summarized:

> *Placeway* held that a contractor's challenge to a government claim need not be certified. This court holds that plaintiff is challenging a government claim to liquidated damages and making its own contractor claim to recover amounts withheld for liquidated damages. The latter must be certified.

*Id.* at 477.

Precedent respects the distinction between a claim and a defense. My colleagues' selective quotation from the opinion in *Sun Eagle*, Maj. Op. at 13 n.2, implements the holding in *Sun Eagle* that the contractor's letter was indeed a "claim," made "in a claim letter," 23 Cl. Ct. at 480. The *Sun Eagle* court then held that since the contractor had made such a claim, it needed to be certified. The court explicitly did *not* hold that a contractor raising a defense to a government claim "must meet the jurisdictional requirements and procedural prerequisites of the

---

[2]   The majority posits that *Placeway* dealt only with government claims, and not contractor defenses. Maj. Op. at 12. That is precisely the point: in *Placeway* this court based jurisdiction on the government's claim; a defense does not have a jurisdictional dimension.

CDA," Maj. Op. at 15. The routine defense that the government contributed to delay is a defense, not a contract modification. Failure to meet the CDA requirements for certification, naming a sum certain, requesting a final decision, or modifying the contract, does not preclude defending against the government's claim.

Indeed, whether Maropakis' several requests for time extensions met the CDA's "claim" requirements is irrelevant – although these letters stated that the contractor would dispute any assessment of delay damages. The issue here is not whether Maropakis perfected a monetary claim of its own, but whether Maropakis is to be permitted to defend against the government's claim. No rule or precedent holds that a contractor forfeits its right of defense if it does not file its own claim. And the court is misguided in its ruling that the government's claim for damages cannot be defended against unless the contractor first undertakes the formal procedures of contract modification. In *Garrett* this court explained that the CDA "provides that a contractor may appeal a Government claim to the appropriate board without submitting a claim of its own to the CO." 987 F.2d at 749. *See also* 41 U.S.C. §609(a)(1) ("[I]n lieu of appealing . . . to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary."). No statute or rule withholds subject matter jurisdiction from such actions when the contractor challenges a government claim.

The government did not dispute that it owed Maropakis the unpaid balance of the contract, and the contracting officer's recognition of that obligation is not appealed. The only issue is the summary grant of judgment to the government for the delay damages in the government's claim, while denying, on "jurisdictional"

grounds, Maropakis' right of defense. The right to defend against an adverse claim is not a matter of "jurisdiction," nor of grace; it is a matter of right. The denial of that right, argued by the government on a theory of "jurisdiction" that was supported by the Court of Federal Claims and is now supported by this court, is contrary to the purposes of the CDA, contrary to precedent, and an affront to the principles upon which these courts were founded.[3] I respectfully dissent.

---

[3] "It is as much the duty of Government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals." A. Lincoln, First Annual Message (Dec. 3, 1861), engraved at the entrance to this courthouse, 717 Madison Place NW, Washington, DC.