NEWMAN, Circuit Judge,
dissenting.
This is a simple situation, in which the government determined, through its own audit, that certain payments are owed to the subcontractor. Two contracting officers then declined to make the payments, although the obligation was not, and is not, denied. The Armed Services Board of Contract Appeals held it did not have “jurisdiction,” and this court now accepts this negation of the procurement system and the Contract Disputes Act. The Defense Contract Audit Agency found that the payments are allowable, allocable, and reasonable, yet the government declines to pay, and on this appeal presents a plethora of creative excuses, none of which were raised by the contracting officers, none of which affects the government’s conceded obligation. Thus a simple correction of a billing error has morphed into a nearly four-year litigation, with no end in sight. I respectfully dissent.
The facts are not in dispute. Parsons Global Services was the prime contractor and Odell International a subcontractor for construction of some healthcare facilities in Iraq. On February 28, 2006 the DCAA determined that Odell had applied an incorrect mark-up rate for its overhead and other indirect costs. Odell used a mark-up rate of 75% instead of the contract rate of 175%; the DCAA final report in June 2008 stated that Odell’s overhead and G & A costs at the 175% mark-up were supported and appropriate. Parsons submitted, in August 2008, payment requests for the undercharged mark-up. The Termination Contracting Officer declined to act on the requests separately from the Parsons termination for convenience claims, for the major portions of the Parsons contracts had been terminated for convenience on March 3, 2006. As Parsons points out, the Odell undercharges, and the DCAA confirmatory audit, all relate to the period before termination.
Parsons then, on December 22, 2008, submitted the Odell claim to the Procurement Contracting Officer, who denied the claim; the reasons for this denial are not mentioned by the Board or shown in the record provided to this court. Parsons appealed the denial to the Armed Services Board of Contract Appeals (“Board” or “ASBCA”) in accordance with the Contract Disputes Act. The Act states that the Board “has jurisdiction to decide any appeal from a decision of a contracting officer.” 41 U.S.C. § 7105(e)(1)(A). However, the Board held that it did not have jurisdiction under the Contract Disputes Act, for the reason that Parsons had made a “routine” request for payment of the undercharged mark-up. The Board stated that “[t]he government maintains that it has not disputed, and in fact could not dispute, its liability for payment of the costs because of the absence of such a request,” and that a “routine request for payment that is not in dispute when submitted is not a claim.” Parsons Global Servs., Inc., ASBCA No. 56731, 11-1 BCA ¶ 34,632, 2010 ASBCA LEXIS 110, at *23, 24 (Dec. 3, 2010) (quoting FAR 2.101). Thus the Board declined to remedy the contracting officers’ refusal to pay the amount to which the DCAA found Odell to be entitled.
Parsons has attempted to fit this situation into the language of precedent, and states that “Parsons’ CDA claim was a *1174 non-routine request for payment, and the requirement that a dispute exist prior to its submission of its claim did not apply.” Parsons Br. 9. The court explained in Reflectone, Inc. v. Dalton that if the request for payment is “non-routine,” all that is required is “(1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain.” 60 F.3d 1572, 1575 (Fed.Cir.1995) (en banc) (citing FAR 33.201). This court stated in Reflectone that “[a] demand for compensation for unforeseen or unintended circumstances cannot be characterized as ‘routine.’ ” 60 F.3d at 1577. Major billing errors are neither foreseen nor intended. The government does not dispute that this claim meets the Reflectone criteria.
Nonetheless, the ground on which the ASBCA relied to deny its own jurisdiction is that the request is “routine.” And the creative arguments now presented by government counsel, on points not raised by the contracting officers, are readily resolved or irrelevant. For example, the government now states that it needed reassurance that Parsons would pay Odell the amount that Parsons is requesting on Odell’s behalf — an obligation set by law; see Severin v. United States, 99 Ct.Cl. 435 (1943) (a prime contractor may submit a subcontractor’s pass-through claim to the government as long as the prime contractor remains liable to pay the subcontractor the payment received from the government). The ASBCA mentioned the government’s theory that perhaps Parsons should first pay Odell for its accounting error, although this was not the basis for the Board’s denial of its own jurisdiction. The government mentions the termination for convenience, although it is not disputed that the DCAA audit related solely to Odell’s underbillings before the termination for convenience.
Parsons complied with the protocols of claim submission as set forth in the FAR and the CDA, after the contracting officers denied the claim. See 41 U.S.C. § 7103; England v. Swanson Grp., Inc., 353 F.3d 1375, 1379 (Fed.Cir.2004). Nonetheless, the ASBCA held that there was no appeal-able action, leaving the contractor without recourse. Precedent is clear that the request for payment, or the amount, does not have to be in dispute, for a CDA claim to arise and incur the Board’s jurisdiction to resolve outstanding issues. Reflectone, 60 F.3d at 1575-76.
The ASBCA and this court err in holding that since the mark-up obligation is “routine” and not disputed, there is no CDA jurisdiction to obtain its payment. The agency’s refusal to pay Parson’s claim, having acknowledged the obligation and having audited it through its own Audit Agency, is contrary to the guiding principle that “The Federal Acquisition System will [cjonduct business with integrity, fairness, and openness.” FAR 1.102(b)(3). See also Corliss Steam-Engine Co. v. United States, 10 Ct.Cl. 494 (1874) (the government “must abide by its own acts and agreements, with the added obligation, because it is a government and more powerful than any individual, to deal with the individual in the strictest fairness and justice”). My colleagues’ endorsement of the refusal also overlooks the Court’s guidance in I.N.S. v. Abudu, 485 U.S. 94, 107, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988) that “[tjhere is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases.”
This lengthy litigation of a conceded governmental obligation is an embarrassment. I respectfully dissent.